[No. S036656. Nov. 2, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
NATHAN PAUL KOBRIN, Defendant and Appellant.

**COUNSEL**

Richard L. Rubin, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General,

Stan M. Helfman, Christopher W. Grove and Jeremy Friedlander, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**ARABIAN, J.**—"For if it be not material, then though it be false, yet it is no perjury, because it concerneth not the point in suit . . . ."[1]

Since early common law, materiality has been considered an "essential element" of the crime of perjury. (Perkins on Criminal Law (2d ed. 1969) p. 462; Note (1938) 11 So.Cal.L.Rev. 309, fn. 1; see *People* v. *Pierce* (1967) 66 Cal.2d 53, 61 [56 Cal.Rptr. 817, 423 P.2d 969].) Yet it has until recently remained the general rule that "[t]he question of the materiality of evidence, no matter when or how it may arise, is always one of law for the court, and not of fact for the jury." (*People* v. *Lem You* (1893) 97 Cal. 224, 228 [32 P. 11]; see, e.g., *People* v. *Jimenez* (1992) 11 Cal.App.4th 1611, 1622-1623 [15 Cal.Rptr.2d 268]; but see *State* v. *Anderson* (1992) 127 N.J. 191 [603 A.2d 928] [determining materiality is jury question under state and federal constitutional law].) Accordingly, "on a trial for perjury, it is the duty of the court to instruct the jury as to what facts would show material testimony." (*People* v. *Lem You*, *supra*, 97 Cal. at pp. 228-229.)

Here, we must decide whether, despite their hoary credentials, these prescripts comport with due process demands that "[t]he prosecution bears the burden of proving all elements of the offense charged . . . and must persuade the factfinder 'beyond a reasonable doubt' of the facts necessary to establish each of those elements" (*Sullivan* v. *Louisiana* (1993) 508 U.S. 275, 277-278 [124 L.Ed.2d 182, 188, 113 S.Ct. 2078], citations omitted; see *In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068]), or conflict with the Sixth Amendment right "to have the jury, rather than the judge, reach the requisite finding of 'guilty.' " (*Sullivan* v. *Louisiana*, *supra*, 508 U.S. at p. 277 [124 L.Ed.2d at p. 188].)

In *People* v. *Hedgecock* (1990) 51 Cal.3d 395 [272 Cal.Rptr. 803, 795 P.2d 1260], this court concluded, with respect to alleged violations of the Political Reform Act of 1974 (Gov. Code, § 81000 et seq.), that "materiality is an element of the offense, and must therefore be determined by the jury." (51 Cal.3d at p. 409.) We expressly left unresolved the question as it relates to prosecutions based on false statements or testimony. (*Ibid.*; cf. *People* v. *Figueroa* (1986) 41 Cal.3d 714, 733, fn. 22 [224 Cal.Rptr. 719, 715 P.2d 680].) We now confront the issue.

[1] 3 Coke, Institutes of the Laws of England (1986 reprint), page 167.

Our determination is guided not only by the United States Supreme Court's extensive development of relevant Sixth Amendment and due process principles, but also by its recent opinion in *United States* v. *Gaudin* (1995) 515 U.S. __ [132 L.Ed.2d 444, 115 S.Ct. 2310], holding materiality in a prosecution under 18 United States Code section 1001 is a question for the jury. ■ Thus enlightened by the high court as well as informed by our own analysis in *People* v. *Hedgecock, supra,* and *People* v. *Figueroa, supra,* we conclude that a constitutionally valid perjury conviction under Penal Code section 118 requires the jury, not the court, to determine all elements of the charge including materiality, i.e., whether the statement or testimony "might have been used to affect [the proceeding in or for which it was made]." (Pen. Code, § 123; see *People* v. *Pierce, supra,* 66 Cal.2d at p. 61.) We therefore reverse the contrary judgment of the Court of Appeal.

I

On May 17, 1991, defendant reported to the police receiving verbal threats from a neighbor, Halim Sanjanie. Based on the report and corroboration by witnesses, the district attorney filed charges against Sanjanie; the matter proceeded to trial on July 22. The court later declared a mistrial, and the case was reset for October.

Between June 11 and September 9, defendant made numerous other complaints to the police of receiving similar threats either in notes left at his doorstep or by telephone. He also reported two fires of suspicious origin occurring outside his apartment. Initially, the police assumed all these acts were attributable to Sanjanie. On July 12, defendant sought a temporary restraining order to prevent further harassment. In conjunction with the application, he submitted an affidavit, signed under penalty of perjury, in which he detailed eight separate incidents of threats or other intimidation allegedly perpetrated by Sanjanie. A superior court judge subsequently issued the requested order.

During the course of the foregoing events, the police instituted surveillance of defendant's apartment in an effort to apprehend the person leaving the threatening notes. On the evening of September 9, Sergeant Roloson was conducting the surveillance and had defendant's door continuously under observation from approximately 8:30 p.m. About midnight, the officer saw defendant for the first time that night arrive at the location and enter his apartment. He saw no evidence of defendant retrieving anything from the area in front of the door.

Shortly thereafter, Roloson received a dispatch call informing him that defendant had just reported finding another threatening note a few minutes

earlier and chasing the apparent culprit from his front porch. Roloson advised the officers at the scene he had not observed any of the activity described and he believed defendant had made a fictitious report.

During questioning by the investigating officers regarding the latest incident, defendant made numerous statements that conflicted with Roloson's observations. Two days later, Roloson spoke with defendant and confronted him with inconsistencies in several of the police reports as well as other evidence of falsification. Defendant admitted he had prepared the threatening notes himself, had made several of the telephone calls himself, and had set the two fires outside his apartment; he offered various excuses to explain or justify his conduct.

The district attorney filed charges alleging one count of perjury (Pen. Code, § 118)[2] based on the affidavit submitted in support of the temporary restraining order, two counts of arson (§ 451, subd. (d)), six counts of preparing a false record or written instrument (§ 134), and nine counts of making a false police report (§ 148.5). At trial, defendant did not contest the evidence against him but presented testimony suggesting he suffered from an impaired mental state at the time of the crimes, which allegedly precluded him from forming the requisite intent and otherwise reduced his culpability. He also moved to dismiss the perjury count on the ground the false portions of the affidavit were not material to the decision to issue the temporary restraining order in light of other true statements it contained. Finding "the majority" of the affidavit false, the court denied the motion. The court also denied defendant's request to submit evidence to the jury on the question of materiality.

Prior to closing argument, defendant requested the jury be instructed to determine whether the statements contained in the affidavit were material, principally citing *People* v. *Hedgecock, supra,* 51 Cal.3d 395, and *People* v. *Figueroa, supra,* 41 Cal.3d 714. He contended some of the statements in his affidavit were true and the temporary restraining order would have issued even without those that were false. Although the prosecution had no objection, the court found *Hedgecock* and *Figueroa* distinguishable, and gave only the standard instruction on perjury (CALJIC No. 7.21 (5th ed. 1989)), which stated in part: "If you find the defendant made one or more of the statements [recited by the court as part of the instruction], said statements were material matters within the definition of perjury read to you."

The jury convicted on all counts. The court suspended imposition of sentence and granted three years' probation on various terms and conditions,

---

[2]All further statutory references are to the Penal Code unless indicated otherwise.

including one year in the county jail. On appeal, defendant challenged the trial court's failure to submit the question of materiality to the jury. The Court of Appeal rejected the argument, concluding that the "continuing and near unbroken line of [contrary] authority" established materiality as an issue of law "even in light of modern due process considerations."

We granted defendant's petition for review to address the question expressly reserved in *People* v. *Hedgecock, supra,* 51 Cal.3d at page 409: whether, in a trial for perjury under section 118, the issue of materiality is retained by the judge as a question of law or is reserved to the exclusive province of the jury as a question of fact.

## II

## A

In California, this court first formulated the "question of law/question of fact" dichotomy as it relates to perjury in *People* v. *Lem You, supra,* 97 Cal. 224, 228-229: "The question of the materiality of evidence, no matter when or how it may arise, is always one of law for the court, and not of fact for the jury. It usually arises in the ordinary trial of a cause, where one party offers evidence, and the other objects to it as immaterial; and in that case it would be clear to every one that the question was for the court. But the question is exactly the same when, on a trial for perjury, the materiality of the alleged false testimony arises. . . . And on a trial for perjury, it is the duty of the court to instruct the jury as to what facts would show material testimony. [Citations.]" Heretofore, a substantial majority of jurisdictions, both state and federal, have applied the same rule.[3]

Nevertheless, its continuing validity has come under a constitutional shadow beginning with the seminal authority of *In re Winship, supra,* 397

---

[3]See generally, Annotation, Materiality of Testimony Forming Basis of Perjury Charge as Question for Court or Jury in State Trial (1985) 37 A.L.R.4th 948; Annotation, Determination of Materiality of Allegedly Perjurious Testimony in Prosecutions Under 18 USCS §§ 1621, 1622 (1975) 22 A.L.R.Fed. 379. The rule has never been universal, however. (See *U.S.* v. *Gaudin* (9th Cir. 1994) 28 F.3d 943, affd. (1995) 515 U.S. __ [132 L.Ed.2d 444, 115 S.Ct. 2310] [holding materiality element of 18 U.S.C. § 1001 is question of fact for jury]; *U.S.* v. *Taylor* (N.D.Cal. 1988) 693 F.Supp. 828 [same, 18 U.S.C. § 1623]; *Pope* v. *State* (1931) 43 Ga.App. 175 [158 S.E. 350, 353-354] [ruling materiality is jury question based on earlier memorandum decision]; *State* v. *Spencer* (1893) 45 La.Ann. 1 [12 So. 135] [holding materiality is jury question under state Constitution]; *Com.* v. *McDuffee* (1979) 379 Mass. 353 [398 N.E.2d 463] [finding materiality is jury question based on *Winship*]; *State* v. *Anderson, supra,* 127 N.J. 191 [603 A.2d 928] [determining materiality is jury question under state and federal constitutional law]; *People* v. *Clemente* (1954) 285 A.D. 258 [136 N.Y.S.2d 202, 62 A.L.R.2d 1009] affd. 309 N.Y. 890 [131 N.E.2d 294] [holding materiality is jury question following change in statutory provisions making it element of perjury as distinguished from lesser crime of false swearing].)

U.S. 358, and continuing through 25 years of consistent and unequivocal United States Supreme Court decisions giving contour to due process and Sixth Amendment imperatives. (See, e.g., *People* v. *Figueroa, supra,* 41 Cal.3d at p. 731.) ■ Although its precise language may sometimes vary, the high court has repeatedly and categorically held: "The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense. [Citation.] Jury instructions relieving States of this burden violate a defendant's due process rights. [Citations.] Such directions subvert the presumption of innocence accorded to accused persons and also invade the truth-finding task assigned solely to juries in criminal cases." (*Carella* v. *California* (1989) 491 U.S. 263, 265 [105 L.Ed.2d 218, 221, 109 S.Ct. 2419].)[4] Quite clearly, this subversion and invasion also implicates Sixth Amendment principles preserving the exclusive domain of the trier of fact. "The constitutional right to a jury trial . . . is a structural guarantee that 'reflect[s] a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or a group of judges.' [Citation.]" (*Carella* v. *California, supra,* 491 U.S. 263, 268 [105 L.Ed.2d 218, 223] (conc. opn. of Scalia, J.).) "Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence. [Citations.]" (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 277 [124 L.Ed.2d at p. 188]; accord, *People* v. *Figueroa, supra,* 41 Cal.3d at pp. 726-727.)

These contemporary explications of due process and Sixth Amendment guaranties have prompted several state courts as well as the federal Ninth

---

[4]See also *Sullivan* v. *Louisiana, supra,* 508 U.S. at pages 277-278 [124 L.Ed.2d at page 188] (prosecution bears burden "of proving all elements of the offense charged"); *Cabana* v. *Bullock* (1986) 474 U.S. 376, 384-385 [88 L.Ed.2d 704, 715-716, 106 S.Ct. 689] (verdict cannot stand if instructions do not require jury "to find each element of the crime"; findings by judge "cannot cure deficiencies" of "failure to instruct [jury] to find an element of the crime"), disapproved on other grounds in *Pope* v. *Illinois* (1987) 481 U.S. 497, 503, footnote, 7 [95 L.Ed.2d 439, 453, 107 S.Ct. 1918]; *Francis* v. *Franklin* (1985) 471 U.S. 307, 313 [85 L.Ed.2d 344, 352-353, 105 S.Ct. 1965] (due process prohibits relieving state "of its burden of persuasion beyond a reasonable doubt of every essential element of a crime"); *Connecticut* v. *Johnson* (1983) 460 U.S. 73, 84 [74 L.Ed.2d 823, 832-833, 103 S.Ct. 969]; *Sandstrom* v. *Montana* (1979) 442 U.S. 510, 522-524 [61 L.Ed.2d 39, 49-51, 99 S.Ct. 2450]; *United States* v. *United States Gypsum Co.* (1978) 438 U.S. 422, 435 [57 L.Ed.2d 854, 862, 98 S.Ct. 2864] (element of offense "cannot be taken from the trier of fact" by instruction on legal presumption); *Patterson* v. *New York* (1977) 432 U.S. 197, 215 [53 L.Ed.2d 281, 294-295, 97 S.Ct. 2319] (state must prove "every ingredient of an offense beyond a reasonable doubt"); *Mullaney* v. *Wilbur* (1975) 421 U.S. 684, 698-701 [44 L.Ed.2d 508, 519-521, 95 S.Ct. 1881]; *In re Winship, supra,* 397 U.S. at page 364 [25 L.Ed.2d at page 375]; *Morissette* v. *United States* (1952) 342 U.S. 246, 275 [96 L.Ed. 288, 306-307, 72 S.Ct. 240] (instruction on conclusive presumption conflicts with presumption of innocence, "which extends to every element of the crime").

Circuit to reassess the propriety of withholding the issue of materiality from the jury and to conclude that however long-standing the established rule, it does not withstand constitutional or analytical scrutiny. (See *Com.* v. *McDuffee, supra,* 398 N.E.2d 463 [materiality is jury determination based on *Winship*]; *State* v. *Anderson, supra,* 127 N.J. 191 [603 A.2d 928] [materiality is jury question under state and federal constitutional law]; *U.S.* v. *Gaudin, supra,* 28 F.3d 943 (*Gaudin I*) [materiality element of 18 U.S.C. § 1001 is question of fact for jury]; see also *U.S.* v. *Taylor, supra,* 693 F.Supp. 828 [same, 18 U.S.C. § 1623].)

■■■ The United State Supreme Court has now itself confirmed the implications of *Winship* and its progeny on the question of who determines materiality. The perjury charges in *U.S.* v. *Gaudin, supra,* 515 U.S. __ [132 L.Ed.2d 444, 115 S.Ct. 2310] (*Gaudin II*), arose under 18 United States Code section 1001, which prohibits making false statements or representations of material fact to a federal department or agency. The defendant challenged the trial court's refusal to instruct on the issue of materiality; and the high court agreed the omission constituted prejudicial error. "The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged; one of the elements of the present case is materiality; [the defendant] therefore had a right to have the jury decide materiality." (515 U.S. at p. __ [132 L.Ed.2d at p. 450, 115 S.Ct. at p. 2314].) Withholding this issue from the jury essentially directed a verdict for the government in violation of the defendant's rights under both the Fifth and Sixth Amendments. (*Id.* at p. __ [132 L.Ed.2d at pp. 448-450, 115 S.Ct. at pp. 2313-2314]; see *Sullivan* v. *Louisiana, supra,* 508 U.S. 275 [124 L.Ed.2d 182].)

In so holding, the court rejected three arguments proffered by the government: (1) even if materiality is an element of perjury, it is nevertheless a "legal" question and juries only decide "factual" questions; (2) "uniform practice . . . excludes the element of materiality from the syllogism"; and (3) stare decisis mandates perpetuation of the prior rule, citing *Sinclair* v. *United States* (1929) 279 U.S. 263 [73 L.Ed. 692, 49 S.Ct. 268] and *Kungys* v. *United States* (1988) 485 U.S. 759 [99 L.Ed.2d 839, 108 S.Ct. 1537]. (*Gaudin II, supra,* 515 U.S. at p. __ [132 L.Ed.2d at p. 450, 115 S.Ct. at p. 2314].)

As to the first argument, the government's position had "no historical support." (*Gaudin II, supra,* 515 U.S. at p. __ [132 L.Ed.2d at p. 451, 115 S.Ct. at p. 2315].) Citing first the definition of materiality, i.e., whether the statement has " 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed' "

(*Gaudin II, supra*, 515 U.S. at p. ___ [132 L.Ed.2d at p. 449, 115 S.Ct. at p. 2313]), the court concluded the issue is one "commonly called a 'mixed question of law and fact,' [which] has typically been resolved by juries." (*Id.* at p. ___ [132 L.Ed.2d at p. 451, 115 S.Ct. at p. 2314]; see *People* v. *Figueroa, supra*, 41 Cal.3d at pp. 730-731.) The jury not only determines the historical facts but also applies the rule of law as instructed by the court to those facts; and this process is a matter of constitutional guaranty. (*Gaudin II, supra*, 515 U.S. at p. ___ [132 L.Ed.2d at pp. 450-452, 115 S.Ct. pp. 2314-2315]; see *People* v. *Hedgecock, supra*, 51 Cal.3d at p. 407.)

As to the "historical exception" claim, the court found "[t]he practice of having courts determine the materiality of false statements in perjury prosecutions is neither as old, nor as uniform, as the Government suggests." (*Gaudin II, supra*, 515 U.S. at p. ___ [132 L.Ed.2d at p. 453, 115 S.Ct. at p. 2316].) In any event, "[s]ince that proposition is contrary to the uniform general understanding (and we think the only understanding consistent with principle) that the Fifth and Sixth Amendments require conviction by a jury of *all* elements of the crime, we must reject those cases that have embraced it."[5] (515 U.S. at p. ___ [132 L.Ed.2d at p. 455, 115 S.Ct. at p. 2317].)

As for stare decisis, the court took the decision in *Sinclair* v. *United States, supra*, 279 U.S. 263, substantially to task, ultimately overruling it. First, it noted "[b]oth the cases cited to support [the assertion that 'pertinency,' like 'materiality,' is a question of law that does 'not depend on the probative value of the evidence'] have since been repudiated." (*Gaudin II, supra*, 515 U.S. at p. ___ [132 L.Ed.2d at p. 456, 115 S.Ct. at p. 2318].) The court then went on itself to repudiate the rationale equating materiality for determining the admissibility of evidence with materiality for a perjury conviction and the assumption both issues should be treated the same. (See *People* v. *Lem You, supra*, 97 Cal. at p. 228.) "It is commonplace for the same mixed question of law and fact to be assigned to the court for one purpose, and to the jury for another." (*Gaudin II, supra*, 515 U.S. at p. ___ [132 L.Ed.2d at p. 456, 115 S.Ct. at p. 2319].) For example, the determination of probable cause in a suppression motion is for the court, while in a prosecution under 18 United States Code sections 241-242 (depriving a person of constitutional rights under color of law) the question is for the jury. (515 U.S. at p. ___ [132 L.Ed.2d at pp. 456-457, 115 S.Ct. at p. 2319]; see also *Com.* v. *McDuffee, supra*, 398 N.E.2d at p. 468; *State* v. *Anderson, supra*, 603 A.2d at pp. 933-934; *People* v. *Clemente, supra*, 136 N.Y.S.2d at p. 206; *Gaudin I, supra*, 28 F.3d at p. 948.)

The *Sinclair* decision was thus left with nothing but "the unexamined proposition, never before supported by this Court, that materiality in perjury

---

[5]"Those cases" include *People* v. *Lem You, supra*, 97 Cal. 224.

cases . . . is a question of law for the judge." (*Gaudin II, supra,* 515 U.S. at p. __ [132 L.Ed.2d at p. 457, 115 S.Ct. at p. 2319].) "While this perfect circularity has a certain aesthetic appeal, it has no logic." (*Ibid.*) Accordingly, "*stare decisis* cannot possibly be controlling when, in addition to [the fact the rule is 'only procedural' and 'rests upon an interpretation of the Constitution'], the decision in question has been proved manifestly erroneous, and its underpinnings eroded by subsequent decisions of this Court. [Citations.]" (*Ibid.*) The court also distinguished *Kungys* v. *United States, supra,* 485 U.S. 759, a noncriminal proceeding involving false testimony given to obtain immigration or naturalization benefits (8 U.S.C. § 1451(a)), in which materiality was held a question of law. (*Kungys* v. *United States, supra,* 485 U.S. at p. 772 [99 L.Ed.2d at pp. 853-854].) Noting the case "did not involve an adjudication to which the Sixth Amendment right to jury trial attaches, [citation], and hence had no reason to explore the constitutional ramifications of *Sinclair*[,]" the court also reiterated that "the characterization of a mixed question of law and fact for one purpose does not govern its characterization for all purposes." (*Gaudin II, supra,* 515 U.S. at p. __ [132 L.Ed.2d at p. 458, 115 S.Ct. at p. 2319].)

B

■ The critical inquiry then is whether under state law "materiality" constitutes an element of the crime of perjury. (*People* v. *Hedgecock, supra,* 51 Cal.3d at p. 407; *U.S.* v. *Taylor, supra,* 693 F.Supp. at p. 835.) States are generally at liberty within constitutional limits to define crimes as they choose, thereby circumscribing those factors subject to jury consideration. (See *McMillan* v. *Pennsylvania* (1986) 477 U.S. 79, 84-85 [91 L.Ed.2d 67, 75-76, 106 S.Ct. 2411]; *Patterson* v. *New York, supra,* 432 U.S. at pp. 201-202 [53 L.Ed.2d at pp. 286-287]; but see *Mullaney* v. *Wilbur, supra,* 421 U.S. at pp. 698-701 [44 L.Ed.2d at pp. 519-521]; cf. *State* v. *Anderson, supra,* 603 A.2d 928 [finding state statute providing "materiality is a question of law" constitutionally invalid].) In this case, the Attorney General concedes the issue. (Cf. *People* v. *Hedgecock, supra,* 51 Cal.3d at p. 407 [Attorney General acknowledged materiality is element of Gov. Code, § 81004]; *Gaudin II, supra,* 515 U.S. at p. __ [132 L.Ed.2d at pp. 449-450, 115 S.Ct. at p. 2313] [government did not contest materiality is element of 18 U.S.C. § 1001].) We find this concession accords with the statutory language, its historical antecedents, and relevant decisional law. (Cf. *Courts* v. *Thomson* (1939) 33 Cal.App.2d 89, 90 [91 P.2d 135].)

The terms of section 118 plainly cast materiality as an element: every person who takes an oath under the circumstances described and "willfully and contrary to the oath, states as true any material matter which he or she

knows to be false" is guilty of perjury.[6] Even prior to its codification and consistent with the common law from which it derives, "[t]he rule [was] well established, that the false oath must be material to the issue, . . . otherwise, however willful, it cannot be perjury." (*People* v. *McDermott* (1857) 8 Cal. 288, 290; *People* v. *Dunstan* (1922) 59 Cal.App. 574, 576 [211 P. 813]; see also code comrs. note, foll. Ann. Pen. Code, § 118 (1st ed. 1872, Haymond & Burch, comrs.-annotators) p. 60.) Decisional authority as well has uniformly construed materiality as "essential" (*People* v. *Schweichler* (1911) 16 Cal.App. 738, 741 [117 P. 939]; see *People* v. *Matula* (1959) 52 Cal.2d 591, 595 [342 P.2d 252]; *People* v. *Poe* (1968) 265 Cal.App.2d 385, 390 [71 Cal.Rptr. 161]; *People* v. *Walker* (1967) 247 Cal.App.2d 554, 559 [55 Cal.Rptr. 726]; *People* v. *Darcy* (1943) 59 Cal.App.2d 342, 348 [139 P.2d 118], disapproved on other grounds in *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 301, fn. 11 [124 Cal.Rptr. 204, 540 P.2d 44]; *People* v. *Brophy* (1942) 49 Cal.App.2d 15, 24 [120 P.2d 946]); and, an indictment is subject to challenge for failing to contain a sufficient averment thereof. (*People* v. *Schweichler, supra,* 16 Cal.App. at p. 741; see *People* v. *Von Tiedeman* (1898) 120 Cal. 128, 131 [52 P. 155]; § 950.) Moreover, without a requirement of materiality, the crime would be false swearing rather than perjury. (See *People* v. *Clemente, supra,* 136 N.Y.S.2d at pp. 204-207.)

Having resolved this question of state law, we have only to invoke the syllogism formulated by the New Jersey Supreme Court and echoed by the United States Supreme Court in *Gaudin II, supra*: "(a) the constitution requires that the jury decide each element of a crime beyond a reasonable doubt; (b) materiality is an element of the crime of perjury; therefore, (c) the constitution requires that the jury decide the element of materiality in perjury trials."[7] (*State* v. *Anderson, supra,* 603 A.2d at p. 935; *Gaudin II, supra,* 515 U.S. at p. ___ [132 L.Ed.2d at pp. 450-451, 115 S.Ct. at p. 2314]; see *People* v. *Hedgecock, supra,* 51 Cal.3d at p. 409.) ▮ Accordingly, the trial

---

[6]The full text of section 118 provides as follows: "(a) Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury. [¶] This subdivision is applicable whether the statement, or the testimony, declaration, deposition, or certification, is made or subscribed within or without the State of California. [¶] (b) No person shall be convicted of perjury where proof of falsity rests solely upon contradiction by testimony of a single person other than the defendant. Proof of falsity may be established by direct or indirect evidence."

[7]*People* v. *Lem You, supra,* 97 Cal. 224, is overruled; subsequent decisions adopting the rule that materiality in a perjury prosecution is a question of law are disapproved to the extent they are inconsistent with our holding.

court erred in failing to instruct the jury to determine whether the false statements contained in defendant's affidavit were material.

III

Although the Attorney General concedes the characterization of materiality as an element of perjury, he strenuously argues the failure properly to instruct in this case does not require reversal. ■ Instructional error of federal constitutional proportions is generally subject to harmless error analysis under *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (See *Rose* v. *Clark* (1986) 478 U.S. 570, 576-579 [92 L.Ed.2d 460, 469-471, 106 S.Ct. 3101].) When the deficiency is of a magnitude that it infects the structural integrity of the trial process, however, it is reversible per se. (*Sullivan* v. *Louisiana, supra,* 508 U.S. at pp. 281-282 [124 L.Ed.2d at pp. 190-191].) Both this court and the United States Supreme Court have strongly implied that omitting to instruct on an element of an offense comes within the latter category. (*People* v. *Cummings* (1993) 4 Cal.4th 1233, 1312-1315 [18 Cal.Rptr.2d 796, 850 P.2d 1]; see *Rose* v. *Clark, supra,* 478 U.S. at p. 580, fn. 8 [92 L.Ed.2d at p. 472]; see also *Connecticut* v. *Johnson, supra,* 460 U.S. 73, 95, fn. 3 [74 L.Ed.2d 823, 840] (dis. opn. of Powell, J.).)[8]

■ The Attorney General contends a harmless error determination is possible in this case because in resolving the other elements of perjury the jury "would have considered evidence pertinent to the issue of materiality, if not all the evidence establishing that fact." (Cf. *People* v. *Howard* (1992) 1 Cal.4th 1132, 1172 [5 Cal.Rptr.2d 268, 824 P.2d 1315] [factual question resolved adversely to defendant under other, properly given instructions]; see, *ante,* fn. 8.) For several reasons, we are unpersuaded the misinstruction here is susceptible to this type of analysis. First, a reviewing court generally only evaluates the strength of the evidence considered by the jury in assessing the prejudicial effect of an impermissible burden-shifting presumption, which may have had a comparatively minimal impact on the verdict. By contrast, in most cases the complete omission of an element inevitably affects the verdict both directly and adversely. (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 280 [124 L.Ed.2d at pp. 189-190]; see, e.g., *Yates* v. *Evatt*

---

[8]Of course, harmless error analysis is still appropriate when, in the circumstances, "it is possible to determine that although an instruction . . . was erroneously omitted, the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions." (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].) In light of our findings on this record, we need not decide whether, and under what other circumstances, a reviewing court may determine the omission of instruction on an element was harmless beyond a reasonable doubt.

(1991) 500 U.S. 391, 403-406 [114 L.Ed.2d 432, 448-450, 111 S.Ct. 1884], disapproved on other grounds in *Estelle* v. *McGuire* (1991) 502 U.S. 62, 73, fn. 4 [116 L.Ed.2d 385, 399, 112 S.Ct. 475]; *Carella* v. *California, supra,* 491 U.S. at pp. 266-267 [105 L.Ed.2d at pp. 22-223]; cf. *People* v. *Harris* (1994) 9 Cal.4th 407, 429-432 [37 Cal.Rptr.2d 200, 886 P.2d 1193] [misinstruction on element of robbery harmless under *Chapman*].)

The circumstance here is more akin to the erroneous reasonable doubt instruction at issue in *Sullivan* v. *Louisiana, supra,* 508 U.S. 275. As a result of the misdirection, the jury necessarily premised its determination of guilt on a constitutionally deficient standard of proof. Accordingly, "the entire premise of Chapman review is simply absent" "because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee." (*Id.* at pp. 279-280 [124 L.Ed.2d at p. 189].) Similarly in this case, the jury's findings on materiality were not merely imperfect, they were nonexistent due to the instructional omission. Thus, "[t]here is no *object*, so to speak, upon which harmless-error scrutiny can operate." (*Id.* at p. 280 [124 L.Ed.2d at p. 190].)

Second, even if we could infer with any degree of certainty the jury's likely "findings" under the instructions given, we have no basis for determining the extent to which they reflect a consideration of whether defendant's false statements were material since the only reference to the issue specifically removed it from the deliberative process. As the court explained in *Yates* v. *Evatt, supra,* 500 U.S. at page 403 [114 L.Ed.2d at pages 448-449], "To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered *on the issue in question,* as revealed in the record." (Italics added; see also *id.* at pp. 413-414 [114 L.Ed.2d at pp. 454-455] (conc. opn. of Scalia, J.) [if improperly instructed, jury evaluates evidence *"with the wrong question in mind"* and therefore it is "impossible to say beyond a reasonable doubt" error was harmless].) Given the complete failure to instruct on materiality, i.e., to have the jury assess the evidence in relation to *that* element of the offense, a finding of harmless error would rest solely on conjecture, effectively substituting this court for the jury as the trier of fact.

Finally, the Attorney General's position assumes that all possible evidence on the question of materiality was actually presented to the trier of fact. It appears, however, the trial court's rulings on both proffered evidence and instructions may have affected the composition of the record. (Cf. *Rose* v. *Clark, supra,* 478 U.S. at p. 579, fn. 7 [92 L.Ed.2d at p. 471] [instructional error did not affect presentation of evidence].) Prior to resting his case,

defendant attempted to put before the jury evidence that in his view would undermine a finding of materiality. In refusing to instruct the jury on this question, the trial court concomitantly rejected the evidence as inadmissible. To find instructional error harmless beyond a reasonable doubt, a reviewing court must assess "not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." (*Sullivan* v. *Louisiana, supra,* 508 U.S. at p. 279 [124 L.Ed.2d at p. 189].) The evidentiary void only compounds an inquiry already impermissibly speculative under this standard.

Given the state of the record and the strength of our constitutional mandate, we find this case indistinguishable from *People* v. *Hedgecock, supra:* "[T]he defense did not concede the issue of materiality, and the trial court's instruction completely deprived the jury of an opportunity to consider the materiality of [the statements contained in] defendant's [affidavit]. Under these circumstances, we cannot say beyond a reasonable doubt that the instruction had no effect on the jury's verdict on the perjury offense[]." (51 Cal.3d at p. 410.)

DISPOSITION

The judgment of the Court of Appeal on count 1 is reversed.

Kennard, J., Baxter, J., and Werdegar, J., concurred.

**MOSK, J.**—I concur in the opinion prepared for the court by Justice Arabian. His analysis is compelling. I join it readily.

I write separately merely to emphasize my view that "omitting to instruct on an element of an offense" is indeed error that is generally "reversible per se" (maj. opn., *ante,* at p. 428) under the Sixth Amendment to the United States Constitution as made applicable to the states through the due process clause of the Fourteenth Amendment. (E.g., *People* v. *Hansen* (1994) 9 Cal.4th 300, 328, fn. 8 [36 Cal.Rptr.2d 609, 885 P.2d 1022] (conc. & dis. opn. of Mosk, J.); *People* v. *Johnson* (1993) 6 Cal.4th 1, 59 [23 Cal.Rptr.2d 593, 859 P.2d 673] (conc. & dis. opn. of Mosk, J.); see, e.g., *People* v. *Wims* (1995) 10 Cal.4th 293, 317 [41 Cal.Rptr.2d 241, 895 P.2d 77] (conc. & dis. opn. of Mosk, J.); *People* v. *Harris* (1994) 9 Cal.4th 407, 451, fn. 3 [37 Cal.Rptr.2d 200, 886 P.2d 1193] (conc. & dis. opn. of Mosk, J.).)

**GEORGE, J.,** Concurring.—I agree with the majority that we must reverse the judgment of conviction, but, unlike the majority, I would reach this

conclusion without purporting to decide whether "materiality" is an element of the crime of perjury, because the People's concession of this point makes it unnecessary to resolve that issue in the present case.

In *United States* v. *Gaudin* (1995) 515 U.S. __ [132 L.Ed.2d 444, 115 S.Ct. 2310], the United States Supreme Court reviewed the validity of a conviction under 18 United States Code section 1001 for making a material false statement in a matter within the jurisdiction of a federal agency. In that case, the trial court had refused to submit to the jury the question whether the allegedly false statement was material. On appeal, the prosecution conceded that the materiality of the allegedly false statement was an element of the offense (*id.* at p. __ [132 L.Ed.2d at p. 450]), but asserted nonetheless that the question of materiality should be decided by the court rather than by the jury. The majority in *Gaudin* accepted the prosecution's concession without further discussion or analysis and resolved the case based upon the following logic: "The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged; one of the elements in the present case is materiality; respondent therefore had a right to have the jury decide materiality." (*United States* v. *Gaudin, supra*, 515 U.S. at p. __ [132 L.Ed.2d at p. 450].)

In *Gaudin*, Chief Justice Rehnquist, joined by Justices O'Connor and Breyer, concurred but wrote separately. The Chief Justice stated that "the Government's concessions have made this case a much easier one than it otherwise might have been" and observed that "[w]hether 'materiality' is indeed an element of every offense under 18 USC § 1001 [18 USCS § 1001] is not at all obvious from its text." (*United States* v. *Gaudin, supra*, 515 U.S. __, __ [132 L.Ed.2d 444, 459].) Noting that "there is a conflict among the Courts of Appeals" on this question, Chief Justice Rehnquist pointed out that the majority in *Gaudin* "does not resolve that conflict; rather, it merely assumes that materiality is, in fact, an element" of the charged offense. (*Ibid.*)

In the present case, as in *Gaudin*, the prosecution has conceded that "materiality" is an element of the charged offense. But rather than simply accepting that concession, the majority has addressed the issue on its merits, declaring that "this concession accords with the statutory language, its historical antecedents, and relevant decisional law. [Citation.]" (Maj. opn., *ante*, at p. 426.)

In my view, it is unnecessary and unwise to resolve, in this case, the issue whether "materiality" is an element of the crime of perjury. It is unnecessary because the People have conceded this issue. It is unwise because, due to the

People's concession, we have not had the benefit of vigorous briefing and argument of both sides of this important issue. I would simply accept the People's concession and leave to another day the resolution of whether "materiality" is an element of the crime of perjury.

I also question the majority's discussion of the harmless error issue. As the majority recognizes, it is unnecessary to decide in this case whether the failure to instruct on an element of an offense is reversible per se or instead is subject to harmless error analysis, because even if we assume, as the People maintain, that such an error may be found harmless in an appropriate case, it is clear that the error was prejudicial in this instance because the materiality question was not clear-cut and the trial court's error led it to preclude defendant from submitting evidence to the jury on the question of materiality. Because the majority explicitly recognizes that "[i]n light of our findings on this record, we need not decide whether and under what . . . circumstances a reviewing court may determine the omission of instruction on an element was harmless beyond a reasonable doubt" (maj. opn., *ante*, at p. 428, fn. 8), in my view it is unnecessary (and inconsistent) for the majority nonetheless to include questionable dicta asserting (1) that both this court and the United States Supreme Court strongly have implied that failure to instruct on an element of an offense is reversible per se (see *id.* at p. 428), and (2) that the circumstances of the present case are "akin" to those in *Sullivan* v. *Louisiana* (1993) 508 U.S. 275 [124 L.Ed.2d 182, 113 S.Ct. 2078] (see maj. opn., *ante,* at p. 429 [giving an erroneous instruction on reasonable doubt is reversible per se]).

The failure to instruct on an element of an offense can occur in a variety of circumstances, ranging from a case (such as the present one) in which the trial court erroneously believes that a particular issue is not an element to be decided by the jury, to a case in which the trial court inadvertently fails to instruct the jury on an undisputed element of the offense. (An example of the latter situation would be a prosecution for rape in which the evidence clearly establishes that the defendant engaged in intercourse with the alleged victim, the defendant relies solely upon a defense of consent, and the trial court, while correctly instructing on consent, inadvertently fails to instruct that penetration is an element of the offense.)

Because the majority in the present case properly declines to decide the question whether the failure to instruct on an element of an offense is reversible per se or instead is subject to harmless error analysis—concluding that reversal is required here in any event because " 'we cannot say beyond a reasonable doubt that the instruction had no effect on the jury's verdict on the perjury offense[]' " (maj. opn., *ante*, at p. 430), I believe the majority errs

in including the several passages, noted above, that appear to prejudge the issue and to suggest that such an error ultimately should be found to be reversible per se.

Accordingly, although I concur in the judgment, I do not join in the majority opinion.

Lucas, C. J., concurred.