Filed 2/6/14  P. v. Lawrence CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DERON C. LAWRENCE,<br><br>    Defendant and Appellant. | B241110<br><br>(Los Angeles County<br>Super. Ct. No. NA086402) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Gary J. Ferrari, Judge.  Affirmed.

Jennifer Hansen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, and Robert M. Snider, Deputy Attorney General, for Plaintiff and Respondent.

_____

Defendant appeals his conviction of three counts of robbery (Pen. Code, § 211),[1] one count of possessing a firearm as a felon (§ 12021, subd. (a)(1)), with true findings on the robbery counts that defendant personally used a firearm within the meaning of section 12022.53, subdivision (b). Defendant, who robbed the patrons of a bar by brandishing what appeared to the victims to be a gun, contends the trial court failed to instruct the jury they must find the weapon was real in order to convict on count 4 and to find the firearm allegations true. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 31, 2009, Raymond Deadman was at the Camelot Bar in Long Beach around the time it opened in the morning. The bartender, Stacy Garrett, was present, as was another customer. Deadman, a regular, ordered his usual beer. Defendant came in the bar, holding a beer bottle, and left. A few minutes later, defendant came back with a gun in his right hand. The gun appeared to Deadman to be a black automatic weapon, not a revolver. Deadman had been in the Army for five years during World War II and was familiar with weapons.

Defendant pointed the gun at Garrett, the bartender. Garrett got the money out of the cash register. Defendant put the gun to Deadman's head and said, "'Give me your money.'" Deadman pulled out his empty wallet and put it on the bar. Defendant said, "'not that wallet,' . . . I [saw] where you got your money to buy the beer.'" Defendant held the gun on Deadman, reached into Deadman's pocket, and pulled $130 out. Deadman was scared, but he did not remember what the gun felt like against his head. Defendant left in a hurry. Deadman testified at trial he believed the gun was real.

Frankie Richey goes to the Camelot Bar every day. The Camelot Bar is in a mall containing a doughnut shop, a cleaners, a barbershop, a liquor store, and a fish store. Before the bar opened, around 5:30 a.m. or 6:00 a.m., he saw defendant in the parking lot. Defendant approached Richey and asked what time the bar opened. When Richey told him 6:00 a.m. was the bar's opening time, defendant responded, "'Well, I really need

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

a drink. I need hair of the dog.'" After the bar opened, defendant entered the bar. There were two other men (Deadman and Don Winnen) and the bartender (Garrett) inside. Richey knows Deadman, Winnen, and Garret. Richey went to the other end of the parking lot to use a pay phone and on his way back to the bar heard yelling. Defendant came out and left quickly down the street. Richey did not see if defendant had anything in his hands. Richey saw someone who might have been defendant get into the passenger side of a car.

Garrett saw defendant enter the bar about 6:25 a.m. She was mopping the floor and defendant came in while she was mopping the floor and said, "'Oh, you're not open?'" Garrett said, "'somebody has got to clean up around here.'" Defendant said he needed a beer because he was "stressing out." Defendant took a seat at the bar and ordered a Budweiser. Garrett spoke to defendant, who asked if he could charge his phone. Defendant drank most of his beer. Deadman came in the bar and sat in between defendant and Winnen. Defendant said he was going to go get a charger for his phone, and left the bar. Garrett went back to mopping the floor and saw defendant through the back door talking to someone in a car parked in the alley. She spoke to defendant through the back door, and told him he could come through the back door instead of going around to the front of the bar.

Defendant walked in through the front door, almost up to the bar, and said, "'everybody lay down and give me all the money.'" Defendant was holding a semiautomatic gun. Garrett had seen a gun before; her father was a Downey officer and went hunting. Defendant pointed the gun at Winnen and Deadman. Garrett started to lie down, and defendant said, "'what are you doing?'" Garrett responded, "'What the fuck do you want me to do? I'm doing what you said, "everybody lay down."'" Garrett stood up and opened the register and gave defendant about $140. At this time, defendant's gun was lying on the bar. Garret could see Winnen lying on the ground and defendant standing next to him. Garrett saw defendant take money from Deadman by reaching into

3

Deadman's pocket. After defendant left, Garrett called 911. Garrett was scared when defendant pulled out his gun.

Police collected forensic evidence from the bar, including DNA and fingerprints from defendant's beer bottle. In April 2010, police were informed that the DNA profile obtained from the beer bottle matched defendant. Police obtained a DNA sample from defendant and confirmed that defendant's DNA matched the DNA recovered from defendant's beer bottle. At trial, Deadman did not identify defendant as the man who robbed him, but Garrett and Richey identified defendant at trial.

No gun was recovered after the robbery.

Defendant was charged in an information filed November 4, 2010 with three counts of robbery (§ 211) and one count of possessing a firearm as a felon (§ 12021, subd. (a)(1)). The information alleged that on the robbery counts defendant personally used a firearm within the meaning of section 12022.53, subdivision (b). The information further alleged as to all counts that defendant had suffered five prior convictions pursuant to section 667, subdivisions (b) through (i) and section 1170.12, subdivisions (a) through (d), and four prior convictions resulting in prison terms pursuant to section 667.5, subdivision (b).

The jury convicted defendant on the four charged counts and found true the allegations he personally and intentionally used a firearm. After the court found defendant's prior convictions true, the court sentenced defendant to a total term of 189 years to life, consisting of 33 years to life for each of the three robbery counts, 20 additional years pursuant to section 667, subdivision (a)(1), and 10 additional years pursuant to section 12022.53, subdivision (b). On count 4, the court sentenced defendant to a concurrent 25-years-to-life sentence.

## DISCUSSION

Defendant argues that his conviction on count 4 must be reversed, and the firearm enhancements on counts 1 through 3 must be stricken because no gun was recovered after the robbery, and the trial court's failure to instruct the jury that the gun defendant used

4

was real lessened the prosecution's burden of proof and permitted the jury to find him guilty on count 4 and find the firearm enhancements true without finding every element of the charged crimes beyond a reasonable doubt. He contends the issue was not waived because we may review the instructional issue where substantial rights are affected, and the error was prejudicial because without a finding the firearm was real, the theory of his guilt is incorrect. Respondent contends defendant waived the error by failing to object at trial, but in any event substantial evidence supports a finding the gun was real and thus any error was harmless.

### A. Factual Background

The trial court instructed the jury with CALJIC No. 17.19, which read: "It is alleged Counts 1, 2 & 3 that the defendant personally used a firearm during the commission of the crime of robbery. [¶] If you find the defendant guilty of the crime of robbery, you must determine whether the defendant personally used a firearm in the commission of that crime. [¶] The word 'firearm' includes a handgun. The 'firearm' need not be operable or loaded. [¶] The term 'personally used a firearm,' as used in this instruction, means that the defendant must have intentionally displayed a firearm in a menacing manner, intentionally fired it, or intentionally struck or hit a human being with it. [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true. [¶] Include a special finding on that question in your verdict, using a form that will be supplied for that purpose."[2]

During the colloquy on instructions, the court stated, "As far as personal use, . . . I reworded it, . . . so it would read, 'It is alleged in counts 1, 2 and 3 that the defendant personally used a firearm' . . . et cetera, et cetera." Defense counsel stated, "I didn't have any objection to 17.19. I wasn't sure about 17.19.1," to which the court responded, "That's the one I took out." Defense counsel responded, "Right. Just seems 17.19

---

[2] The top of the instruction states that it is CALJIC No. 17.19.1, "PERSONAL USE OF FIREARM OR DEADLY WEAPON—SEX."

seemed more on point," and the court concluded, "All right. Anything else before I bring the jury out?"

During closing argument, the prosecution stated, "the gun is not in evidence. Right. So how do you find that [defendant personally used a firearm]?" Counsel continued, "[w]hy would someone bring a fake gun to commit a robbery? That wouldn't make sense . . . ." Counsel argued, "What you have are two people who have experience with guns telling you . . . that [it] was a real gun. You heard the testimony from . . . Deadman, who was a World War II vet, [he] told you his experience with guns. He's able to determine the difference between a revolver and semiautomatic and he was a marksman shot as well and he felt that gun up against his head. [¶] You also heard testimony from . . . Garrett, who told you that she grew up with guns, her dad was a police officer with Downey P.D. It's a real gun. That element is satisfied." Defense counsel focused on the witness's difficulty identifying defendant from a photographic array, and argued that defendant had left, and it was someone else who came back into the bar with the gun.

During deliberations, the jury sent the court a note about the third paragraph of instruction No. 17.19, asking, "Does this take into account [whether] the firearm was real or not?" The court responded, "All information is included in the instructions."

**B.    Discussion**

Section 12022.53 provides: "(b) Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply." Robbery is specified as one of the felonies to which section 12022.53 applies. (§ 12022.53, subd. (a)(4).) For purposes of section 12022.53, subdivision (b), a "'firearm'" is defined as "a device, designed to be used as a weapon, from which is expelled through a barrel, a projectile by the force of an explosion or other form of combustion." (§§ 12001, 16520.) Toy guns, pellet guns, and BB guns are not

6

firearms within the meaning of this statute.  (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1435 (*Monjaras*).)

"The fact that an object used by a robber was a 'firearm' can be established by direct or circumstantial evidence."  (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1435.) "Most often, circumstantial evidence alone is used to prove the object was a firearm. This is so because when faced with what appears to be a gun, displayed with an explicit or implicit threat to use it, few victims have the composure and opportunity to closely examine the object; and in any event, victims often lack expertise to tell whether it is a real firearm or an imitation.  And since the use of what appears to be a gun is such an effective way to persuade a person to part with personal property without the robber being caught in the act or soon thereafter, the object itself is usually not recovered by investigating officers."  (*Id.* at p. 1436.)  Furthermore, circumstantial evidence alone is sufficient to support a finding that the object used . . . [is] a firearm.  (*Ibid.*)

In *Monjaras*, *supra*, 164 Cal.App.4th 1432, the defendant demanded that the victim, a woman, give him her purse and pulled up his shirt and displayed the handle of a black pistol stuck in the waistband of his pants.  The victim had seen guns before but had not handled them; she assumed the weapon was real, and gave the defendant her purse. At trial, the victim testified that the gun was "'[p]robably metal,'" but was not wood and was not plastic, and conceded that she could not tell whether it was real.  (*Id.* at p. 1436.) *Monjaras* found this testimony sufficient to support a finding the gun was real.  "The jury was not required to give defendant the benefit of the victim's inability to say conclusively the pistol was a real firearm.  This is so because 'defendant's own words and conduct in the course of an offense may support a rational fact finder's determination that he used a [firearm]." [Citation.]  Indeed, even though for purposes of section 12022.53, subdivision (b), a firearm need not be loaded or even operable, 'words and actions, in both verbally threatening and in displaying and aiming [a] gun at others, [can] fully support[] the jury's determination the gun was sufficiently operable [and loaded].' [Citation.]  Accordingly, jurors 'may draw an inference from the circumstances

7

surrounding the robbery that the gun was not a toy.' [Citation.]" (*Monjaras*, *supra*, 164 Cal.App.4th at pp. 1436–1437.)

Here, defendant displayed a weapon in a menacing manner, pointing it at Garrett and Winnen, and held it to Deadman's head. Both Garrett and Deadman had extensive experience with weapons, testifying that the weapon was a semiautomatic. Defendant's victims testified they were "scared." These facts support an inference the object defendant displayed during the commission of the robbery was a gun. Further, the prosecution argued to the jury that the gun was real, pointing out that both Garrett and Deadman had experience with firearms. "Simply stated, when as here a defendant commits a robbery by displaying an object that looks like a gun, the object's appearance and the defendant's conduct and words in using it may constitute sufficient circumstantial evidence to support a finding that it was a firearm within the meaning of section 12022.53, subdivision (b). In other words, the victim's inability to say conclusively that the gun was real and not a toy does not create a reasonable doubt, as a matter of law, that the gun was a firearm." (*Monjaras*, *supra*, 164 Cal.App.4th at p. 1437.) Further, the jury was instructed with CALJIC No. 17.19 on the necessity of finding that the crimes were committed with a firearm, which included a handgun. As a result, the factual question whether the gun was real was necessarily resolved adversely to the defendant under this properly given instruction, any error in failing to instruct the jury on this issue was harmless. *(People v. Kobrin* (1995) 11 Cal.4th 416, 428, fn. 8.)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

ROTHSCHILD, Acting P. J.

CHANEY, J.