[No. B067970. Second Dist., Div. Six. Nov. 22, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY FRANEL WINSLOW, Defendant and Appellant.

COUNSEL

Daniel K. Simon, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

YEGAN, J.—The word "enhancement" is bound to send shivers down the spine of any person charged with a felony. In some cases, such as the instant one, punishment for the enhancement may exceed the punishment for the underlying substantive offense. As the moving party in a criminal action, it is the People's obligation not only to plead and prove an enhancement, but also to tender adequate instructions and verdict forms so that a lawful determination can be made and sustained on appeal. All too frequently, this responsibility is lost upon the prosecutor who concentrates on the substantive charge or charges.

The CALJIC committee has provided a general framework for the jury's resolution of enhancements. (See CALJIC No. 17.15 et seq.) However, the

statutory enhancement scheme is so complex that the CALJIC committee has not drafted instructions for each and every situation. (See CALJIC No. 17.24.1 and Use Note.)

We agree with the previously articulated criticism of the Determinate Sentencing Act of 1976.[1] It is capable of trapping everyone, even those who profess expertise. Our colleagues' views have gone unheard in the Legislature. Sentencing issues continue to be in vogue and grow in complexity. (See e.g., *People* v. *McKee* (1995) 36 Cal.App.4th 540, 543 [42 Cal.Rptr.2d 707].) Here, the prosecutor did not tender adequate instructions and the trial court did not adequately instruct on the general principles of law governing enhancements. Nevertheless, applying the recently articulated test of harmless error in *People* v. *Wims* (1995) 10 Cal.4th 293 [41 Cal.Rptr.2d 241, 895 P.2d 77], we conclude that reversal for a new trial on the enhancements is not here required.

---

[1] As Presiding Justice Roth has so eloquently indicated: "[S]entencing statutes are mind-numbing complicated and, by virtue of continued legislative tinkering, not likely to soon become any easier to apply. As the trial judge in this case remarked: 'I regard it as one of the principal credits to my professional career that I had nothing to do with designing the determinate sentencing law.' Such frustration is widely spread. . . . [¶] The frequency with which both simple and vexatious sentencing questions are raised on appeal strongly suggests that the Legislature can and should undertake with the help of bench and bar a solid comprehensive overhaul of the system to help all potential defendants and the public generally." (*People* v. *Reyes* (1989) 212 Cal.App.3d 852, 858-859 [260 Cal.Rptr. 846].)

With equal eloquence, Presiding Justice Gardner has said: "It is hardly 'man-bites-dog' news to the trial judges of this state to observe that the new determinate sentence law is hardly a model of legislative clarity.[1]" Footnote 1 of the quoted passage provides: "As a sentencing judge wends his way through the labyrinthine procedures of section 1170 of the Penal Code, he must wonder, as he utters some of its more esoteric incantations, if, perchance, the Legislature had not exhumed some long departed Byzantine scholar to create its seemingly endless and convoluted complexities. Indeed, in some ways it resembles the best offerings of those who author bureaucratic memoranda, income tax forms, insurance policies or instructions for the assembly of packaged toys." (*Community Release Bd.* v. *Superior Court* (1979) 91 Cal.App.3d 814, 815 [154 Cal.Rptr. 383].)

"When in 1976, the Legislature ended its 60-year-old romance with the Indeterminate Sentence Law, few tears were shed at the demise of that highly visionary, but woefully unsuccessful, effort at effective penology. [¶] Alas, few hosannas have been heard in the judicial system for its successor, the so-called determinate sentence law, Penal Code section 1170 et seq., a legislative monstrosity, which is bewildering in its complexity. Superimposed on Penal Code section 1170 et seq. are the sentencing rules (Cal.Rules of Court, rule 401 et seq.) promulgated under the aegis of Penal Code section 1170.3. Here, the already perplexing provisions of Penal Code section 1170 et seq. are further refined into a kind of labyrinthine formalism under which trial judges carefully pick their way in a kind of ceremonial ritual during the sentencing processes.[1]" Footnote 1 of the quoted passage provides: "Whether all of this results in any uniformity of sentencing is doubtful. Tough judges still sentence severely, easy judges leniently—all within the rules. One result is crystal clear—sentencing today affords a rich field of appellate litigation. It has long since passed that old standby, inadequacy of counsel, and is neck and neck with Penal Code section 1538.5 in Shepard's citations." (*People* v. *Sutton* (1980) 113 Cal.App.3d 162, 164 [169 Cal.Rptr. 656]; see also *People* v. *Begnaud* (1991) 235 Cal.App.3d 1548, 1551 [1 Cal.Rptr.2d 507].)

Anthony Franel Winslow appeals following his conviction by jury of residential burglary (Pen. Code, §§ 459 and 460).[2] The jury also found that he suffered two prior felony convictions resulting in prison terms (§ 667.5, subd. (b)) and a separate and distinct prior "serious felony" conviction (§ 667, subd. (a)(1)).[3] He was sentenced to an aggregate unstayed term of seven years: the low term of two years for the burglary and five years for the "serious felony" enhancement. The sentence on the section 667.5, subdivision (b) prior prison term enhancements was stayed.

Appellant contends, inter alia: "I The trial court erred in denying the motion to strike the alleged Nevada prior conviction. [¶] II Even if the trial court did not err in failing to strike the Nevada prior, it remained to be an issue of fact for the jury to determine whether appellant had personally used a firearm in its commission. [¶] III The trial court committed reversible error in the manner the jury was instructed on the issue of the Nevada prior. [¶] IV Instructional error concerning the two other prior convictions mandates they be reversed as well. V. The trial court erred in concluding it lacked jurisdiction to grant probation. VI. The trial court erred in calculating presentence custody credits."

█ The trial court bifurcated the trial as to the priors. (See *People* v. *Calderon* (1994) 9 Cal.4th 69 [36 Cal.Rptr.2d 333, 885 P.2d 83].) Before the jury's determination of the truth of the priors, appellant unsuccessfully moved to strike the prior "serious felony" on the ground the Nevada prior did not constitute a California "serious felony."

The conviction in Nevada was for a violation of Nevada Revised Statutes section 200.471, assault with a deadly weapon. This statute provides in pertinent part: "1. As used in this section (a) '[a]ssault' means an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another. [¶] . . . [¶] 2. . . . [¶] . . . [¶] (b) If the assault is made with the use of a deadly weapon, or the present ability to use a deadly weapon, [punishment is] by imprisonment in the state prison. . . ."

Section 667 provides in pertinent part: "(a) In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements

---

[2]All further section references are to the Penal Code unless otherwise designated.

[3]The information alleged that appellant had suffered a "serious felony," i.e., violation of Nevada Revised Statutes section 200.471, "Assault with the use of a Deadly Weapon." Specifically, the information alleged that appellant ". . . personally used a firearm while in the commission of the above offense, within the meaning of Penal Code section 1192.7 subdivision (c)(8) and (23)."

of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."

Our California Supreme Court has held that ". . . the trier of fact may consider the entire record of the proceedings leading to imposition of judgment on the [foreign] prior conviction to determine whether the offense of which the defendant was previously convicted involved conduct which satisfies all of the elements of the comparable California serious felony offense." (*People* v. *Myers* (1993) 5 Cal.4th 1193, 1195 [22 Cal.Rptr.2d 911, 858 P.2d 301].)

During the pretrial motion regarding the Nevada conviction, the transcript of the plea (People's exhibit 13) was presented to show that the prior was a qualifying one under section 667, subdivision (a)(1).[4] Nevada Revised Statutes section 200.471 prohibits assaults involving the use of a deadly weapon *or* assaults with the ability to use a deadly weapon. Consequently, a conviction thereunder may or may not involve the personal use of a dangerous or deadly weapon or a firearm as required by section 1192.7, subdivision (c)(8) (personal use of a firearm) and (23) (personal use of a dangerous or deadly weapon).

During the course of the plea in Nevada appellant was asked: "Did you, in fact, shoot Wayne Pulsifer with a firearm?" Appellant responded, "guilty." Nevada defense counsel and appellant personally agreed that a .22-caliber firearm was used in the commission of the offense.

A defendant personally uses a dangerous or deadly weapon under section 12022, subdivision (b) when he "displays such a weapon in an intentionally menacing manner" or intentionally strikes or hits a human being with it. (CALJIC No. 17.16.) He most certainly personally uses a firearm when he shoots a person with a .22-caliber firearm. (CALJIC No. 17.19.) Consequently the trial court did not err in determining the Nevada conviction contained all of the elements of a "serious felony" in California. (*People* v. *Myers, supra,* 5 Cal.4th 1193.) Thereafter, it was for the jury to determine the truth or falsity of the allegation.

■ "Whenever the fact of a previous conviction of another offense is charged in an accusatory pleading, and the defendant is found guilty of the

---

[4]While there was no formal motion to receive the transcript into evidence, the trial court's use of it at the hearing constituted a de facto admission into evidence. A reporter's transcript of the guilty plea is admissible to show that a prior conviction is a "serious felony." (*People* v. *Abarca* (1991) 233 Cal.App.3d 1347, 1349-1351 [285 Cal.Rptr. 213].)

For reasons which are unknown, the transcript was not introduced at the bifurcated trial on the truth of the "serious felony." Consequently, the jury did not consider it.

offense with which he is charged, the jury, or the judge if a jury trial is waived, must unless the answer of the defendant admits such previous conviction, find whether or not he has suffered such previous conviction. . . ." (Pen. Code, § 1158.) Thus, if not admitted, the defendant has the right to a jury trial on the truth or falsity of the prior conviction. (Pen. Code, § 1025; see also *People* v. *Ysabel* (1938) 28 Cal.App.2d 259, 261 [82 P.2d 476].) This ". . . material fact must be proven as any other material fact in the trial of the cause." (*People* v. *Coleman* (1904) 145 Cal. 609, 612 [79 P. 283].) Material facts of the prior conviction include those elements which give rise to additional punishment. Here, those elements would include whether the defendant personally used a dangerous or deadly weapon or a firearm in the commission of the prior offense. (See *People* v. *Morton* (1953) 41 Cal.2d 536, 539 [261 P.2d 523]; *People* v. *Hockersmith* (1990) 217 Cal.App.3d 968, 973 [266 Cal.Rptr. 380], see also 3 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Punishment for Crime, § 1527, p. 1820.) The right to jury trial is "inviolate." (Cal. Const., art. I, § 16.) It is no less so for prior conviction "enhancements."

 Here, the jury was not instructed that it must find appellant personally used a dangerous or deadly weapon, or a firearm. As to the section 667.5, subdivision (b) priors, the jury was not instructed that it had to find that appellant served prison terms and that they were separate. The only instruction given at the bifurcated trial on the "priors" was a modified version of CALJIC No. 17.26.[5]

CALJIC No.17.18 (1992 rev.), which was not given, defines prior prison term and requires the jury to find the separate service of such term for each prior prison term alleged.

CALJIC No.17.16, which was not given, defines "dangerous or deadly weapon," what "use" means, and the personal nature of the use.

---

[5]The modified CALJIC No. 17.26 instruction stated: "The defendant Anthony Franel Winslow was accused in the information of having violated PC § 459, residential burglary, and the jury has now returned a verdict of guilty as to that particular charge. [¶] It is also alleged in the information that the defendant, Anthony Franel Winslow, previously has been convicted of a violation of section NRS 200.471, assault with the use of a deadly weapon in the State of Nevada, for the County of Clark, case number C82346 on or about April 28, 1988, and section 245(a)(1) of the California Penal code, assault with great bodily injury and with deadly weapon in the State of California, for the County of San Mateo, case number C12354-01 on or about July 29, 1983, and section 11359 of the California Health and Safety Code, possession of marijuana for sale in the State of California, for the County of San Francisco, case number 115449, on or about March 5, 1985. [¶] You must now determine the truth of these allegations."

CALJIC No. 17.19, which was not given defines firearm, "use," and the requirement of personal use.[6]

Thus, the trial court neglected to provide substantive instructions on the 667.5 subdivision (b) prior prison terms enhancements and the 667 subdivision (a)(1) prior "serious felony" conviction enhancement.

■ "The trial court must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all elements of a charged offense. [Citation.]" (*People* v. *Cummings* (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d 796, 850 P.2d 1].) This rule applies to the "elements" of an "enhancement."[7]

The question then becomes whether the inadequacy of the instructions concerning these priors resulted in a miscarriage of justice, i.e., whether he suffered prejudice with respect to the increased punishment for the priors. In *People* v. *Wims*, *supra*, 10 Cal.4th 293, our Supreme Court determined that the harmless error standard (Cal. Const., art. VI, § 13; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Cahill* (1993) 5 Cal.4th 478, 492 [20 Cal.Rptr.2d 582, 853 P.2d 1037]) applies to " '. . . wrongly omitted instructions' " dealing with enhancements. (10 Cal.4th at p. 314.) Thus, we reverse for new trial on the enhancements only if we can say that " '. . . it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error.' [Citation.]" (*Id.*, at p. 315.) Phrased otherwise, we look to see if there is a miscarriage of justice, i.e., prejudice occasioned by the failure to adequately instruct. " 'In determining whether there was prejudice, the entire record should be examined, including the facts and the instructions, the arguments of counsel, any communications from the jury during deliberations, and the entire verdict.' [Citation.]" (*Id.*, at p. 315.)

■ With respect to the 667.5 subdivision (b) prior prison term enhancements, appellant has not suffered prejudice. Sentence thereon was stayed pending completion of the unstayed aggregate seven-year term. The jury's determination that he suffered these prior prison terms does not result in any adverse consequences.

---

[6]The CALJIC committee has not drafted an instruction for prior "serious felonies." Here the People alleged two theories on how appellant could have committed a prior "serious felony," i.e., one, that he personally used a firearm (§ 1192.7, subd. (c)(8)) in the prior felony *and* two, that he personally used a dangerous or deadly weapon (§ 1192.7, subd. (c)(23)), in the commission of the prior felony.

[7]We recognize that an "enhancement" is not a criminal offense, per se. (*People* v. *Waite* (1983) 146 Cal.App.3d 585, 593 [194 Cal.Rptr. 245]; Cal. Rules of Court, rule 405(c). [" 'Enhancement' means an additional term of imprisonment added to the base term."].) Nevertheless, the prosecutor must prove each of the "elements" of an enhancement before the trier of fact can return a true finding.

With respect to the section 667 subdivision (a)(1) prior "serious felony," we reach the same conclusion. Looking to the "entire record," it is apparent that appellant did suffer a prior "serious felony" conviction. He admitted shooting Wayne Pulsifer and being convicted of a felony. The transcript, People's exhibit 13, so shows.

People's exhibit 14, which was before the jury, contained official documents from Clark County, Nevada. The amended information unequivocally showed that appellant was charged with ". . . felonious attempt to commit a violent injury, with use of a deadly weapon, upon the person of another, to wit: WAYNE PULSIFER by shooting at and into the body of the said WAYNE PULSIFER with a firearm." ■ An information is admissible to show that a prior conviction is a "serious felony." (*People* v. *Johnson* (1989) 208 Cal.App.3d 19, 27 [256 Cal.Rptr. 16]; *People* v. *Gomez* (1990) 219 Cal.App.3d 157, 160 [268 Cal.Rptr. 50].)

■ The judgment of conviction recited that appellant was convicted of ". . . assault with the use of a deadly weapon. . . ."

Even without the use of People's exhibit 13, a jury could and did easily piece the two documents in People's exhibit 14 together (*People* v. *Myers*, *supra*, 5 Cal.4th 1193, 1195) to find what People's exhibit 13 shows, i.e., that appellant personally shot Wayne Pulsifer with a firearm and was convicted of a felony.

It is not reasonably probable that the jury would have reached a more favorable determination on this issue if it had been adequately instructed. If we were to remand, the People could offer People's exhibit 13 and we can say, with reasonable confidence, that a jury would find this enhancement true based thereon.

■ We need not remand for resentencing on the theory that the trial court mistakenly believed it was without power to grant probation. Respondent argues that appellant was convicted of residential burglary and that probation is precluded "[e]xcept in unusual cases where the interests of justice would best be served . . . ." (§ 462, subd. (a).) Here, appellant was not eligible for probation even if the case was "unusual." The sentencing court was required to impose a consecutive five-year prison term for the prior "serious felony." (§§ 667, subd. (a)(1), 1385, subd. (b); *People* v. *Shirley* (1993) 18 Cal.App.4th 40, 44 [22 Cal.Rptr.2d 340]; *People* v. *Goodner* (1992) 7 Cal.App.4th 1324, 1334 [9 Cal.Rptr.2d 543]; *People* v. *Gonzales* (1990) 220 Cal.App.3d 134, 142 [269 Cal.Rptr. 221]; *People* v. *Valencia* (1989) 207 Cal.App.3d 1042, 1045 [255 Cal.Rptr. 180].) While a

first time residential burglar may be eligible for probation if the case is "unusual," a defendant convicted of residential burglary who is found to have suffered a prior "serious felony" must be sentenced to state prison. Any other disposition would do violence to the letter and spirit of section 667, subdivision (a)(1). ■ As long as the punishment prescribed by the Legislature is not cruel or unusual, ". . . it is the function of the legislative branch to define crime and proscribe punishments . . . ." (*In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921].)

Finally the Attorney General concedes that the judgment must be modified to show 161 days of presentence custody plus 80 days of conduct credit.

The judgment is modified to show that appellant is credited with 161 days of actual time served and 80 days of conduct credit as of sentencing. As so modified, the judgment is affirmed.

Stone (S. J.), P. J., and Gilbert, J., concurred.