Opinion
 

 RICHLI, J.
 

 Defendant was convicted of assault with a deadly weapon and false imprisonment. He received a three-year sentence enhancement pursuant
 
 *712
 
 to Penal Code section 12022.7, subdivision (a) for infliction of great bodily injury. He contends the court erred in: (1) not giving CALJIC No. 17.20 or an equivalent instruction on the elements of the enhancement and (2) excluding evidence of the victim’s prior acts of moral turpitude.
 

 In the published portion of this opinion, we conclude that, under
 
 People
 
 v.
 
 Wims
 
 (1995) 10 Cal.4th 293 [41 Cal.Rptr.2d 241, 895 P.2d 77], the standard of reversibility for failure to instruct on the elements of a great bodily injury enhancement is whether it is reasonably probable a result more favorable to the defendant would have been reached absent the error. Applying that standard, we find no prejudice in this case. In the unpublished portion of the opinion, we reject defendant’s remaining contention.
 

 I
 

 Factual and Procedural Background
 

 A.
 
 Facts
 

 Defendant and John Sanborn were lovers from January to November of 1994 and lived together during that time. In early November, they terminated the relationship but agreed to remain friends. Defendant went to Arizona but soon returned, temporarily occupying a condominium.
 

 In early December, defendant and Sanborn met for dinner at the condominium. Defendant said he had returned to the area to be around in case Sanborn changed his mind about reestablishing their relationship. Sanborn said he did not want to reestablish it.
 

 While Sanborn was preparing to leave, defendant asked him to spend the night. Sanborn declined. Defendant walked quickly across the living room and hit Sanborn in the forehead. Defendant then pulled Sanborn across the room to a bar, where defendant got a paring knife with a blade of about four or five inches. Defendant started stabbing Sanborn in the chest and arm.
 

 Defendant and Sanborn wrestled for several minutes, and defendant continued to stab Sanborn in the stomach and back. At one point, Sanborn got the knife and threw it into the living room, but defendant got a larger steak knife and continued to stab him. Defendant was saying things like, “I thought you loved me,” “You said you wouldn’t leave me,” and “If I can’t have you, nobody can.”
 

 In total, defendant stabbed Sanborn 25 times. Eventually, defendant put Sanborn on a bed where he remained the rest of the night. Despite repeated
 
 *713
 
 requests from Sanborn, defendant refused to summon help. Defendant also tied Sanborn’s hands and feet, and smashed a beer bottle over his forehead sometime during the night.
 

 Defendant finally called 911 about 8:45 the next morning. Defendant was arrested, and Sanborn was admitted to the hospital with multiple stab wounds which required immediate surgery. He spent three days in intensive care and a week in the hospital, and sustained numerous scars from the attack.
 

 Defendant admitted the altercation but gave a markedly different version of it. According to defendant, he and Sanborn began arguing and shoving each other. Sanborn got a knife and tried to stab defendant. Defendant got the knife away. During the struggle, the lights went out. As the two struggled for the knife, Sanborn “sliced open” and bled profusely. Defendant did not call the authorities until the next morning because Sanborn did not want him to.
 

 B.
 
 Verdicts and Sentence
 

 A jury convicted defendant of two counts of assault with a deadly weapon and by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)), one based on his use of a knife and one based on his use of the beer bottle. With respect to the count based on the knife, the jury found true an allegation that defendant inflicted great bodily injury on Sanborn. (Pen. Code, § 12022.7, subd. (a).) The jury also convicted defendant of one count of false imprisonment. (Pen. Code, § 236.)
 

 The court sentenced defendant to three years for the assault with the knife, and three consecutive years for infliction of great bodily injury. It also imposed three years for the assault with the bottle and two years for the false imprisonment, both terms to be served concurrently with the term for assault with the knife.
 

 II
 

 Discussion
 

 A.
 
 Failure to Instruct on Great Bodily Injury Enhancement
 

 1.
 
 Sufficiency of Instructions
 

 The court did not give CALJIC No. 17.20 or any equivalent instruction setting forth the elements of infliction of great bodily injury for purposes of
 
 *714
 
 Penal Code section 12022.7.
 
 [1]
 
 It did state to the jury that, in connection with the charge of assault with a knife, the prosecution had charged “that in the commission of the offense hereinabove set forth in the Information, the said defendant, Stanley Ray Clark, with the intent to inflict such injury, inflicted great bodily injury upon John Sanborn, not an accomplice to the above offense, within the meaning of Penal Code section 12022.7(a).” It further told the jury, in defining assault with a deadly weapon or by means of force likely to produce great bodily injury, that “[gjreat bodily injury refers to significant or substantial bodily injury or damage; it does not refer to trivial or insignificant injury or moderate harm.” Finally, realizing after it completed its instructions that no verdict form had been provided for the great bodily injury allegation, the court told the jury, “you will see that under Count I the District Attorney further charges that in the commission of the offense hereinabove set forth in the Information said defendant, Stanley Ray Clark, with the intent to inflict such injury[,] inflicted great bodily injury upon John Sanborn. [U You’ll have to make a finding. There will be a verdict form sent into you later on today as to whether or not if you find him guilty of charge one whether or not there was great bodily injury inflicted.”
 

 Defendant argues the instructions were inadequate to inform the jury of the elements required for a true finding on the enhancement allegation. In particular, he points out the court never told the jury, as former CALJIC No. 17.20 did, that a finding of specific intent was required. The Attorney General argues the instructions were adequate because, though the court did not mention specific intent, in describing the enhancement allegation it twice used the words “with the intent to inflict such injury,” virtually a direct quote from Penal Code section 12022.7, subdivision (a) as it then read.
 

 A trial court “must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all of the elements of a charged offense. [Citation.]”
 
 (People
 
 v.
 
 Cummings
 
 (1993) 4 Cal.4th 1233, 1311 [18 Cal.Rptr.2d
 
 *715
 
 796, 850 P.2d 1].) “This rule applies to the ‘elements’ of an ‘enhancement.’ ”
 
 (People
 
 v.
 
 Winslow
 
 (1995) 40 Cal.App.4th 680, 688 [46 Cal.Rptr.2d 901], fn. omitted.)
 

 In
 
 People
 
 v.
 
 Wims, supra,
 
 10 Cal.4th 293 (hereafter
 
 Wims),
 
 the prosecution alleged the defendants in committing a robbery personally used a dangerous and deadly weapon, a knife, within the meaning of Penal Code section 12022, subdivision (b). The court did not specifically instruct on the elements required for a true finding on the allegation. (10 Cal.4th at pp. 299-300.) It did, however, tell the jury in reviewing the verdict forms that with respect to the robbery count, “ ‘ [t]his instruction has a further requirement on you [sz'c]. “We further find that the use of the deadly weapon allegation, violation of Penal Code section 12022(b) to be,” there’s another blank, “true or not true.” And when you reach a verdict as to this particular allegation, then your foreperson is to write in the correct true or not true, date it and sign it.’ ”
 
 (Id.,
 
 at p. 301.)
 

 The Supreme Court held the trial court’s failure to instruct specifically on the elements of the enhancement was error, notwithstanding its reference to the enhancement in instructing on the possible verdicts: “In this case, the court’s omission of CALJIC No. 17.16 or an equivalent instruction, mitigated only by the court’s reading of the ‘deadly weapon use’ verdict form and the prosecutor’s discussion of the ‘knife allegation,’ left the jury uninformed as to all of the factual elements necessary to a ‘true’ finding under section 12022(b). [¶] . . . Plainly, the court erred in not instructing defendants’ jury on the factual elements of a section 12022(b) enhancement.”
 
 (Wims, supra,
 
 10 Cal.4th at p. 303.)
 

 Here, similarly, the court gave no instruction which specifically advised the jury of the elements of the great bodily injury enhancement. Though the court twice recited what the prosecution had alleged in connection with the enhancement, it did not explain what elements it had to prove to sustain the allegation. Further, the allegation, as recited to the jury, did not define great bodily injury, and while the court defined the term for purposes of the underlying assault charge, it did not indicate that definition applied to the enhancement.
 

 Similarly, the instructions did not indicate that a specific intent was required. In fact, as defendant points out, the only instruction on intent related to general intent to commit the charged offenses, and the verdict form on the enhancement included no language on intent at all. Where specific intent is an element of a charge, failure so to instruct is error.
 
 (People
 
 v.
 
 Brenner
 
 (1992) 5 Cal.App.4th 335, 339 [7 Cal.Rptr.2d 260];
 
 *716
 

 People
 
 v.
 
 Ford
 
 (1983) 145 Cal.App.3d 985, 989-990 [193 Cal.Rptr. 684].) Although the Attorney General argues inserting the word “specific” before “intent” would not have added appreciably to the statutory language the court recited, if the court had given former CALJIC No. 17.20 presumably it would have followed the suggestion of the Use Note to that instruction and given additional instructions to explain the significance of specific intent. (See Use Note to CALJIC No. 17.20 (5th ed. 1988) p. 455 [“Since this enhancement requires specific intent, appropriate instructions such as CALJIC 2.01, 2.02 or 3.31 may be required.”].)
 

 While it is possible the jury pieced together an accurate understanding of the enhancement elements from the instructions as given, we are not prepared to assume that it did so. As did the Supreme Court in
 
 Wims,
 
 we conclude the court’s indirect references to the enhancement allegation were not an adequate substitute for an instruction explicitly advising the jury of the elements required. We next consider whether the error was reversible.
 

 2.
 
 Standard of Prejudice
 

 Error in instructing on the elements of a
 
 charged offense
 
 is either reversible per se or reversible unless harmless beyond a reasonable doubt, depending on whether the error “withdraws from jury consideration substantially all of the elements of an offense.”
 
 (People
 
 v.
 
 Cummings, supra,
 
 4 Cal.4th 1233, 1315; see also
 
 People
 
 v.
 
 Kobrin
 
 (1995) 11 Cal.4th 416, 428 [45 Cal.Rptr.2d 895, 903 P.2d 1027].) In
 
 Wims, supra,
 
 10 Cal.4th 293, the Supreme Court considered what standard should apply to a trial court’s failure to instruct on the elements of an enhancement, as opposed to a charged offense.
 
 [2]
 

 The court initially emphasized that “a sentence enhancement is not equivalent to a substantive offense, because a defendant is not at risk for punishment under an enhancement allegation until convicted of a related substantive offense. [Citation.] At that time, a defendant’s liberty interest ‘has been substantially diminished by a guilty verdict.’ ”
 
 (Wims, supra,
 
 10 Cal.4th at p. 307, quoting
 
 McMillan
 
 v.
 
 Pennsylvania
 
 (1986) 477 U.S. 79, 84 [106 S.Ct. 2411, 2415, 91 L.Ed.2d 67, 75].) Instead, an enhancement is a sentencing matter which, unlike a substantive offense, carries no federal constitutional right to a jury determination: “There simply is ‘no Sixth Amendment right to jury sentencing, even where the sentence turns on specific findings of fact.’ ”
 
 *717
 
 (10 Cal.4th at p. 304, quoting
 
 McMillan
 
 v.
 
 Pennsylvania, supra, 477
 
 U.S. at p. 93 [106 S.Ct. at p. 2420, 91 L.Ed.2d at pp. 80-81].)
 

 The court in
 
 Wims
 
 noted that where no federal constitutional right has been abridged, “ ‘the State is free ... to apply its own state harmless-error rule to such errors of state law.’ ” (10 Cal.4th at p. 314, quoting
 
 Cooper
 
 v.
 
 California
 
 (1967) 386 U.S. 58, 62 [87 S.Ct. 788, 791, 17 L.Ed.2d 730].) Under the California Constitution, an appellate court is obliged to affirm a judgment unless “ ‘it is reasonably probable that a result more favorable to the [defendant] would have been reached in the absence of the error.’ ” (10 Cal.4th at p. 315, quoting
 
 People
 
 v.
 
 Watson
 
 (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; see Cal. Const., art. VI, § 13.) Applying that test, the court found no basis for reversal in view of the strength of the evidence showing the defendants had used a knife in the robbery. (10 Cal.4th at pp. 315-316.)
 

 Subsequent Court of Appeal decisions have extended Wims’s application of the
 
 Watson
 
 standard of prejudice to trial courts’ failure adequately to instruct on the elements of other enhancements. (See, e.g.,
 
 People
 
 v.
 
 Gutierrez
 
 (1996) 46 Cal.App.4th 804, 815 [54 Cal.Rptr.2d 149] [discharge of firearm at occupied motor vehicle under Pen. Code § 12022.5, subd. (b)(1)];
 
 People
 
 v.
 
 Winslow, supra,
 
 40 Cal.App.4th 680, 687 [prior prison term under Pen. Code § 667.5, subd. (b) and prior serious felony conviction under Pen. Code § 667, subd. (a)(1)];
 
 People
 
 v.
 
 Johnson
 
 (1995) 38 Cal.App.4th 1315, 1317 [45 Cal.Rptr.2d 602] [personal use of firearm under Pen. Code § 12022.5, subd. (a)].) We must decide whether that standard should be applied to a failure adequately to instruct on a great bodily injury enhancement under Penal Code section 12022.7.
 
 [3]
 

 In concluding a weapon-use enhancement is not the equivalent of a substantive offense, and therefore that a failure to instruct on the elements of the enhancement is not federal constitutional error but may be reviewed under
 
 Watson,
 
 the Supreme Court in
 
 Wims
 
 made several observations which are significant here. The court first noted that the defendant’s use of a weapon is “a traditional sentencing factor.” (10 Cal.4th at p. 306.) Therefore, the Legislature’s decision to impose an additional punishment for weapon
 
 *718
 
 use “does not transform section 12022(b) from a sentencing provision into a substantive offense.”
 
 (Ibid.)
 

 Additionally, the court observed as a general matter that “[t]he Legislature . . . has in various ways expressed its intention that enhancements
 
 not
 
 be treated as substantive offenses.” (10 Cal.4th at p. 307, fn. omitted.) For example, the statute defining the weapon-use enhancement (Pen. Code, § 12022, subd. (b)) provides that the enhancement does not apply if weapon use is an element of the charged offense. Thus, the enhancement is properly viewed as distinct from the underlying offense to which it attaches. (10 Cal.4th at p. 307, fn. 7.)
 

 Finally, the
 
 Wims
 
 court noted, Penal Code section 1170.1, subdivision (h), authorizes the trial court to strike the additional punishment for a weapon-use enhancement. In contrast, once a defendant has been convicted of a substantive offense, a court generally is bound under the determinate sentencing laws to impose punishment within prescribed ranges.
 
 (Wims, supra,
 
 10 Cal.4th at p. 307, fn. 7.)
 

 These observations are equally true of the great bodily injury enhancement provided for in Penal Code section 12022.7. Infliction of great bodily injury, like weapon use, is a traditional sentencing factor. (Cal. Rules of Court, rule 421(a)(1).) Like section 12022, subdivision (b), section 12022.7, subdivision (a) expressly provides that the enhancement it authorizes does not apply where the conduct on which it is based “is an element of the offense of which [the defendant] is convicted.” And like a weapon-use enhancement, a great bodily injury enhancement may be stricken by the court under Penal Code section 1170.1, subdivision (h).
 

 In view of these similarities, we perceive no valid reason to treat a great bodily injury enhancement differently from a weapon-use enhancement in determining the standard of prejudice for instructional error. A great bodily injury enhancement is no more the equivalent of a substantive offense than is one based on weapon use. Rather, a great bodily injury enhancement, like the enhancement for weapon use, should be considered a sentencing matter subject to the harmless error analysis endorsed in
 
 Wims.
 
 We therefore consider whether, had the jury been instructed specifically on the elements of the great bodily injury enhancement, it is reasonably probable that an outcome more favorable to defendant would have occurred.
 

 3.
 
 Application of Watson Standard to This Case
 

 We have little hesitation concluding no result more favorable to defendant would have been reached had the court given former CALJIC No.
 
 *719
 
 17.20 or an equivalent instruction. As it read when defendant committed his offenses, Penal Code section 12022.7 required that the defendant “with the intent to inflict such injury, personally inflict[] great bodily injury on any person other than an accomplice . . . .”
 
 {Id.,
 
 subd. (a).) Once it concluded defendant was guilty of assaulting Sanborn with a knife, the jury could not reasonably fail to conclude he personally inflicted the stab wounds, which were too numerous and severe to have occurred by any other means.
 

 Defendant’s story that the wounds occurred inadvertently, during a struggle in which Sanborn initially had control of the knife, was not credible. When interviewed by the police following his arrest, defendant specifically stated he had a knife before Sanborn did. And when defendant was arrested, he had only three scratches on his forearms and chest which were not serious and were not bleeding. Sanborn, in contrast, had multiple serious stab wounds and had lost about 20 percent of his total blood volume into his abdominal cavity. The blood loss would have proved fatal without medical intervention.
 

 It also is not reasonably likely a correctly instructed jury would have failed to find the required specific intent. There were two views as to what the term “specific intent” meant for purposes of Penal Code section 12022.7, as it read when defendant committed the present offenses. One line of authority held all that was required was “ ‘ “the intent to commit a battery which is required for assault,” ’ ” i.e., that the injury be “ ‘ “caused by the deliberate act of the defendant, and not accidentally.” ’ ” The other line of authority required “ ‘ “that the defendant must have intended to cause great bodily injury.” ’ ” (See generally,
 
 People
 
 v.
 
 O’Connell
 
 (1995) 39 Cal.App.4th 1182, 1191 [46 Cal.Rptr.2d 379], and authorities there cited.)
 

 Under either interpretation, it is not reasonably likely the jury could have failed to find the requisite intent once it concluded defendant committed the assault. Again, the number and nature of the wounds were inconsistent with anything other than a deliberate intent to inflict substantial injury, if not to kill Sanborn outright.
 

 Finally, even if we concluded a
 
 Chapman
 
 standard of review should be applied,
 
 [4]
 
 we would not find the instructional error to be reversible. Rather, the considerations discussed above would compel us to conclude beyond a
 
 *720
 
 reasonable doubt that a properly instructed jury would have made the same finding on the enhancement allegation.
 

 B.
 
 Exclusion of Sanborn’s Prior Conduct
 

 *
 

 III
 

 Disposition
 

 The judgment is affirmed.
 

 Hollenhorst, Acting P. J., and McDaniel, J.,
 
 †
 
 concurred.
 

 [1]
 

 At the time of the present offenses, CALJIC No. 17.20 provided, in relevant part; “If you find a defendant guilty of_, you must determine whether or not such defendant, with the specific intent to inflict such injury, did personally inflict great bodily injury, on [some person] [name] in the [attempted] commission of_.
 

 “ ‘Great bodily injury’ as used in this instruction means a significant or substantial physical injury. Minor, trivial or moderate injuries of a temporary nature [do not constitute great bodily injury] [and] are not sufficient.
 

 “The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true.”
 

 In 1995, Penal Code section 12022.7 was amended to delete the requirement that the great bodily injury be inflicted “with the intent to inflict such injury” (Stats. 1995, ch. 341, § 1), and CALJIC No. 17.20 was subsequently revised to reflect the amendment.
 

 [2]
 

 Neither party cites nor discusses
 
 Wims.
 
 Defendant argues the instructional error was either reversible per se or reversible unless harmless beyond a reasonable doubt under
 
 Chapman
 
 v.
 
 California
 
 (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065] (hereafter
 
 Chapman).
 
 The Attorney General argues that if error occurred, it should be reviewed under
 
 Chapman.
 

 [3]
 

 We recognize that at least three Court of Appeal decisions have applied a
 
 Chapman
 
 standard of prejudice to error in instructing on great bodily injury enhancement allegations under Penal Code section 12022.7.
 
 (People
 
 v.
 
 Czahara
 
 (1988) 203 Cal.App.3d 1468, 1475 [250 Cal.Rptr. 836] [erroneous transferred intent instruction which allowed jury to presume intent to injure one victim from intent to injure the other];
 
 People
 
 v.
 
 Nava
 
 (1989) 207 Cal.App.3d 1490, 1499 [255 Cal.Rptr. 903] [erroneous instruction that bone fracture is “substantial and significant physical injury” as a matter of law];
 
 People
 
 v.
 
 Beltran
 
 (1989) 210 Cal.App.3d 1295, 1308 [258 Cal.Rptr. 884] [same].) Because each of these decisions predates
 
 Wims,
 
 we do not consider them controlling.
 

 [4]
 

 We would not, even if we found the error to be of federal constitutional magnitude, apply a standard of reversibility per se as defendant advocates. “Instructional error of federal constitutional proportions is generally subject to harmless error analysis under
 
 Chapman
 
 v.
 
 California
 
 [citation].”
 
 (People
 
 v.
 
 Kobrin, supra,
 
 11 Cal.4th 416, 428.) That standard governs a failure to instruct on the specific intent required for a substantive offense.
 
 (People
 
 v.
 
 Brenner, supra,
 
 5 Cal.App.4th 335, 339;
 
 People
 
 v.
 
 Dollar
 
 (1991) 228 Cal.App.3d 1335, 1343
 
 *720
 
 [279 Cal.Rptr. 502].) The court in
 
 Wims
 
 rejected the defendants’ contention that the failure to instruct on the enhancement in that case was reversible per se (10 Cal.4th at p. 312), and its discussion applies equally here.
 

 *
 

 See footnote,
 
 ante,
 
 page 709.
 

 †
 

 Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.