Filed 12/7/15  P. v. Barrie CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KATHLEEN ADELLE BARRIE,<br><br>    Defendant and Appellant. | F067893<br><br>(Super. Ct. No. 10CM1088)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

Melissa Baloian Sahatjian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Peter H. Smith and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

----

[*]    Before Gomes, Acting P.J., Kane, J. and Smith, J.

A jury convicted appellant Kathleen Adelle Barrie of grand theft (Pen. Code, § 487, subd. (a))[1] and found true an allegation that the loss exceeded $65,000, for purposes of a "great taking" enhancement (§ 12022.6, subd. (a)(1)).

On July 30, 2013, the court sentenced Barrie to an aggregate four-year local term, the aggravated term of three years on her grand theft conviction and a one-year great taking enhancement.

On appeal, Barrie contends: (1) the court committed instructional error; (2) the court violated Barrie's right to due process when it ordered her to pay restitution of $188,806.73; and (3) alternatively, that she was denied the effective assistance of counsel with respect to the restitution award to the school. We affirm.

## FACTS

From 2002 through 2009, Barrie worked at Hanford West High School as the Activities Finance Clerk in the office of the Associated Student Body (ASB). Barrie's responsibilities included collecting money from school club fundraisers, ASB cards, the student store, and at-school sporting events. She also made bank deposits and paid bills. Between 2005 through 2009, her annual salary was $36,000.

In the spring of 2009, an unpaid bill for $60,000 for cheerleader uniforms prompted a fraud investigation that implicated Barrie in the disappearance of funds that were discovered missing.

On October 26, 2011, the district attorney filed an information charging Barrie with grand theft (count 1) and a great taking enhancement pursuant to section 12022.6, subdivision (a)(1).

At trial, Forensic Auditor Fasto Hinejosa testified that from July 1, 2005 through May 11, 2009, Barrie misappropriated a total of $156,620.56, that she failed to deposit into a school bank account. According to Hinejosa, Barrie used two schemes to

---

[1] All further statutory references are to the Penal Code.

2.

misappropriate money. In one scheme, she used a process commonly known as "kiting." In this scheme, she would take cash from deposit A and replace it with cash from deposit or source B. She would then take cash from deposit or source C and replace the money that deposit B was short and the pattern would repeat itself. In another scenario, she simply stole both cash and checks from a deposit she was supposed to make.

Hinejosa used banking slips and other documents provided by the school district and documents found at Barrie's house to determine that Barrie misappropriated $156,620.56. From a number of altered deposit slips Hinejosa calculated that the school suffered an additional loss of $11,007.51. However, due to the lack of a complete, verifiable paper trail that unequivocally established that the missing amounts were actually turned in to Barrie, Hinejosa was not completely certain that she misappropriated these additional funds. Additionally, Hinejosa identified several areas in which the school likely incurred losses, but due to the lack of supporting data like deposit slips, he was forced to estimate the loss. After performing a battery of tests, Hinejosa estimated that the school suffered an additional potential loss of $37,380.90. Thus, he concluded that Barrie misappropriated $156,620.56 and that "[c]ircumstantial evidence point[ed] to an additional potential loss of $48,388.41."

The evidence at trial also established that Barrie had a Player's Club card at the Tachi Palace Hotel and Casino. Between 2006 and 2009, the card showed a loss of $156,000 worth of credits, 35 to 50 percent of which represented cash losses.

## DISCUSSION

Barrie contends the court prejudicially erred by its failure to instruct on the section 12022.6, subdivision (a) enhancement. Respondent concedes the court erred but argues that the error was harmless. We agree with respondent.

"A trial court 'must instruct even without request on the general principles of law relevant to and governing the case. [Citation.] That obligation includes instructions on all of the elements of a charged offense. [Citation.]' [Citation.] 'This rule applies to the

3.

"elements" of an "enhancement.""" (*People v. Clark* (1997) 55 Cal.App.4th 709, 714-715.)

Section 12022.6, in pertinent part, provides:

"(a) When any person takes, damages, or destroys any property in the commission or attempted commission of a felony, with the intent to cause that taking, damage, or destruction, the court shall impose an additional term as follows:  [¶]  (1) If the loss exceeds sixty-five thousand dollars ($65,000), the court, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted, shall impose an additional term of one year."

Based on the great taking enhancement alleged in count 1 of the information, the court should have instructed the jury with CALCRIM No. 3220 as follows:

"If you find the defendant guilty of the crime[] charged in Count [1] …, you must then decide whether the People have proved the additional allegation that the value of the property [taken] was more than $[65,000].

"To prove this allegation, the People must prove that:

"1.  In the commission … of the crime, the defendant [took] property;

"2.  When the defendant acted, [she] intended to [take] the property;

"AND

"3.  The loss caused by the defendant's [taking] the property was greater than $[65,000].

"[¶] … [¶]

"The People have the burden of proving this allegation beyond a reasonable doubt.  If the People have not met this burden, you must find that the allegation has not been proved."  (CALCRIM No. 3220.)

We agree with the parties that the trial court erred by its failure to charge the jury with CALCRIM No. 3220.  However, the error was harmless beyond a reasonable doubt if "the factual question posed by the omitted instruction was necessarily resolved

4.

adversely to [appellant] under other, properly given instructions." (*People v. Stewart* (1976) 16 Cal.3d 133, 141.)

The court charged the jury on grand theft in the language of CALCRIM No. 1800 as follows:

"The defendant is charged with grand theft by larceny.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1.  The defendant took possession of property owned by someone else;

"2.  The defendant took the property without the owner's or owner's agent's consent;

"3.  When the defendant took the property she intended (to deprive the owner of it permanently or to remove it from the owner's or owner's agent's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property);

"AND

"4.  The defendant moved the property, even a small distance, and kept it for any period of time, however brief."

The court also charged the jury in the language of CALCRIM No. 1801 as follows:

"If you conclude that the defendant committed a theft, you must decide whether the crime was grand theft or petty theft.

"The defendant committed grand theft if she stole property worth more than $950.

"All other theft is petty theft.

"The People have the burden of proving beyond a reasonable doubt that the theft was grand theft rather than a lesser crime.  If the People have not met this burden, you must find the defendant not guilty of grand theft."

5.

Pursuant to a special finding on the verdict form, the jury also found that Barrie "took, damaged and destroyed property of a value exceeding $65,000.00, within the meaning of … Section 12022.6[, subdivision] (a)(1), as alleged in the Information."

Here, the factual questions posed by the first two elements listed in CALCRIM No. 3220 were resolved adversely against Barrie under CALCRIM Nos. 1800 and 1801; the factual question posed by the third element was resolved adversely against her by the special finding in the verdict form, which required the jury to find that the loss exceeded $65,000.

Barrie misplaces her reliance on *People v. Cummings* (1993) 4 Cal.4th 1233 (*Cummings*) to contend that the failure to instruct on section 12022.6, subdivision (a) was structural error requiring automatic reversal because the court failed to instruct on any element of this enhancement. In *Cummings* the court instructed on only one out of five elements of robbery and the jury did not find the facts necessary to establish the remaining elements of the offense in the context of other properly given instructions. (*Cummings*, *supra*, 4 Cal.4th at pp. 1312-1313.) In finding the error prejudicial and reversing 13 robbery-related convictions, the court held that instructional error that withdraws from jury consideration substantially all of the elements of an offense is *reversible per se*, unless, as previously noted, other instructions required that the jury "find the existence of the facts necessary to a conclusion that the omitted element had been proved." (*Id*. at p. 1315; accord, *People v. Mil* (2012) 53 Cal.4th 400, 413-414.)

However, "when the term 'sentence enhancement' is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an 'element' of the offense." (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 494.)

Here, the great taking enhancement was the functional equivalent of an element of the grand theft offense because it was used to impose a sentence beyond the maximum

authorized for grand theft.  Thus, *Cummings* is easily distinguishable because the failure to instruct here involved only one element and, as discussed above, the factual questions posed by that element were resolved adversely to Barrie in the context of other properly given instructions and the special finding in the verdict form.  Accordingly, we conclude that the failure to charge the jury with CALCRIM No. 3220 was harmless beyond a reasonable doubt.

## The Restitution Hearing

The probation report indicated that Barrie misappropriated approximately $156,620.56 of school funds whose theft was documented in an audit report in the district attorney's file.  It also indicated that the school incurred a total of $32,186.17 for legal services, insurance claims, and forensic auditing and that these expenses were detailed in an email that the school sent to the probation department.  Based on these amounts the probation report recommended that the court order Barrie to pay a total of $188,806.73 in restitution to the school.  At Barrie's sentencing hearing, the court, without objection and without affording Barrie a restitution hearing, ordered her to pay this amount as restitution to the school.

Barrie contends the court violated her right to due process by ordering her to pay the above amount of restitution without providing her a hearing or obtaining a personal waiver of her right to a hearing and because the evidence does not support a restitution order in the amount of $188,806.73.  Alternatively, Barrie contends she was denied the effective assistance of counsel if she forfeited this issue by defense counsel's failure to object.  We reject these contentions.

A "defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution."[2]  (§ 1202.4, subd. (f)(1).)  However, "[t]he scope of a

---

[2]     Additionally, section 1214, subdivision (b) provides:  "In any case in which a defendant is ordered to pay restitution, the order to pay restitution (1) is deemed a money judgment if the defendant was informed of his or her right to have a judicial

criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited: "'A defendant's due process rights are protected when the probation report gives notice of the amount of restitution claimed ..., and the defendant has an opportunity to challenge the figures in the probation report at the sentencing hearing.'" [Citations.]" (*People v. Cain* (2000) 82 Cal.App.4th 81, 86.) Further, "'complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal.' [Citation.] This [forfeiture] applies to restitution orders. [Citations.]" (*People v. Bradley* (2012) 208 Cal.App.4th 64, 90.)

Here, the probation report gave Barrie notice that the department was seeking restitution of $188,806.73 and at her sentencing hearing she did not object to this amount or to a lack of a restitution hearing. By failing to object, Barrie forfeited her right to challenge the amount of victim restitution on appeal.

Moreover, "[t]o prevail on a claim of ineffective assistance of counsel, the defendant must show counsel's performance fell below a standard of reasonable competence, and that prejudice resulted. [Citations.] When a claim of ineffective assistance is made on direct appeal, and the record does not show the reason for counsel's challenged actions or omissions, the conviction must be affirmed unless there could be no satisfactory explanation. [Citation.] Even where deficient performance appears, the conviction must be upheld unless the defendant demonstrates prejudice, i.e., that "'but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"" [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 569.)

determination of the amount and was provided with a hearing, waived a hearing, or stipulated to the amount of the restitution ordered, and (2) shall be fully enforceable by a victim as if the restitution order were a civil judgment, and enforceable in the same manner as is provided for the enforcement of any other money judgment."

The record does not disclose why defense counsel did not object to the amount of restitution or to the court's failure to hold a restitution hearing. However, there was an additional $48,388.41 in losses to the school that potentially could have been attributed to Barrie and at a restitution hearing the prosecutor would have had to prove these losses only by a preponderance of the evidence. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.) Further, counsel may have deliberately not asked for a restitution hearing because this additional amount made it futile to challenge the amount awarded or to avoid Barrie being ordered to pay up to $48,388.41 more in restitution. Thus, Barrie has not met her burden of showing that defense counsel's representation was deficient.

Nor has Barrie shown how she was prejudiced by defense counsel's failure to request a restitution hearing. Barrie contends that at a hearing it is likely the amount of restitution would have been different because: (1) the defense expert testified that Hinejosa speculated what money sources were used to determine the amount of the money loss; (2) a portion of the losses were attributed to "miscellaneous items that were never deposited in the bank or inserted in the [general ledger];" and (3) the email to probation that listed additional school expenses of $32,186.17 was not included in the probation report or in the record. We disagree.

The defense expert testimony referred to above is refuted by Hinejosa's report and accompanying exhibits which were submitted into evidence. These documents show that the monetary losses attributed to Barrie were calculated based primarily on discrepancies between deposit slips, bank statements, and the school's general accounting ledger. Further, that a portion of the losses designated as miscellaneous were never deposited or memorialized in the general ledger does not mean they were not supported by other documentary evidence like completed deposit slips that were found at Barrie's house and not used to deposit funds or checks that were received and not cashed. Moreover, the absence from the record of an email separately listing the $32,186.17 of additional expenses incurred by the school does not mean that this information and the underlying

documentation would not have been presented at a restitution hearing, if Barrie had requested one. Therefore, since Barrie has failed to show that her defense counsel provided ineffective representation or that she was prejudiced thereby, we reject her ineffective assistance of counsel claim.

## **DISPOSITION**

The judgment is affirmed.