Filed 3/5/15  P. v. Rich CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>ELIJAH RICH,<br><br>　　　Defendant and Appellant. | B253180<br><br>(Los Angeles County<br>Super. Ct. No. MA054013) |

APPEAL from a judgment of the Superior Court for the County of Los Angeles. Daviann L. Mitchell, Judge.  Affirmed in part and reversed in part.

James Koester, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven E. Mercer and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## SUMMARY

Defendant Elijah Rich contends his conviction of stalking must be reversed because the trial court erroneously denied his request to act as his own attorney. He also asserts the trial court prejudicially misinstructed the jury on the elements of prison prior allegations, four of which the jury found true, so that a retrial is required on those allegations.

Because the record reflects defendant was still serving his sentence on one of the four prior convictions at the time the current crime was committed, we reverse the jury's finding that a term was served in prison as described in Penal Code section 667.5[1] for that offense. We otherwise affirm the judgment.

## FACTS

On November 21, 2013, a jury convicted defendant of the crime of stalking J. Calapon, a correctional officer, between June 14, 2011, and May 1, 2012, while defendant was in state prison. In a bifurcated proceeding, the jury also found true allegations that defendant had suffered four prior convictions for which he served a prior prison term and "did not remain free of prison custody for, and did commit an offense resulting in a felony conviction during, a period of 5 years subsequent to the conclusion of said term . . . ."

The court sentenced defendant to a total term of nine years, consisting of the high term of five years on the stalking count, plus four years for the prison priors. The court also issued a 10-year protective order, ordered custody and conduct credits consistent with defendant's discharge date of January 17, 2013 (on his most recent prison term), and made other orders not at issue on appeal.

We do not describe the facts supporting defendant's conviction of stalking, as he makes no claim of error relating to the facts underlying that conviction. The pertinent facts are those concerning the denial of his request to represent himself, and those

---

[1] All statutory references are to the Penal Code unless otherwise specified.

2

relating to the bifurcated proceeding on his prison priors. We relate those facts in our legal discussion of each issue.

## DISCUSSION

**1.      The *Faretta* Motion**

A defendant has the constitutional right under the Sixth and Fourteenth Amendments to represent himself, and may waive the right to counsel in a criminal case. (*Faretta v. California* (1975) 422 U.S. 806, 818-820 (*Faretta*).) If the defendant is mentally competent and within a reasonable time before trial makes an unequivocal request for self-representation, knowingly and intelligently after having been advised by the court of its dangers, the request must be granted. (*Id.* at p. 835; *People v. Valdez* (2004) 32 Cal.4th 73, 97-98; *People v. Welch* (1999) 20 Cal.4th 701, 729.)

A trial court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." (*Faretta*, *supra*, 422 U.S. at p. 834, fn. 46.) "[T]he same rule applies to the denial of a motion for self-representation in the first instance when a defendant's conduct prior to the *Faretta* motion gives the trial court a reasonable basis for believing that his self-representation will create disruption." (*People v. Welch, supra,* 20 Cal.4th at p. 734.) "Regardless of where it occurs, a court may order termination for misconduct that seriously threatens the core integrity of the trial." (*People v. Carson* (2005) 35 Cal.4th 1, 6.)

**a.      The facts**

In this case, on June 10, 2013, defendant asked to represent himself. After a colloquy between the court (the Honorable Thomas R. White) and defendant about his understanding of legal procedures and the experience of the prosecutor, the court said:

"Okay. What does concern me, Mr. Rich, and I'll get right to what I believe to be a very critical point here, is that on at least two occasions I have had to issue a force extract orders for you to be removed from your cell in county jail, transported to the facility here, and then ordered you to be removed from your cell here, and removed from your transportation as well, if necessary, in order to require you to appear in court. [¶] I see that on the last appearance on 5-22-2013, I received notification from county jail that

3

you had refused to transport to court, and I trailed the matter to today's date for pretrial with a force extract order being issued. This is, as I say, the second time that this has occurred."

The court then asked defendant: "[W]ith regard to your issues of nonconforming conduct, your refusal to come to court, is there anything that you wanted to say with regard to that issue?" Defendant responded: "I don't – I never had a problem with custody. They didn't have to use any type of force on me. I am respectful of custody. They never had a problem. I don't have any writeups, and that is all I have to say, Your Honor." Defendant's counsel then told the court that "this had to do with trying to get his [previous] attorney to actually even communicate with him. It was never to be disrespectful to the court." The court responded:

"I understand. However, my job is to determine whether or not it would be appropriate to allow [defendant] to represent himself in these cases. And, unfortunately, it does not appear to me that he is able to do that. There is evidence of a disciplinary pattern and history based on the fact that not once, but twice, we have had to do this, and there may actually have been a previous incident, although I didn't see a transcript of it, and I haven't had time just in this brief noticed period that I had about the motion to review the entire docket history. But even based on the two incidents . . . , I must determine if out-of-court disruptions would support a high likelihood of in-court disruptions. And it certainly appears to me from the nature of the refusal that there would be a clear indication that [defendant] would not be able to comport with the core trial procedures. [¶] . . . I can't imagine that anything would be more subverting of the courtroom proceedings than just to refuse to come to court, so this tells me that [defendant] is not going to be able to comport to court rules and structures."

Observing that the court must preserve the record by reciting the incidents in question, the court continued, referring to its May 22, 2013 court order "mandating that the sheriff may use all reasonable force necessary to secure the defendant's appearance in court, including forced extraction from his cell at the county jail and from the local lockup for appearance in court, and the sheriff was also required to be tasked with

4

ensuring that the defendant is in court line and boards the bus for transport to court, which causes disruption with the sheriff's transport procedures, takes deputies away from valued time that needs to be spent at the county facility.  [¶]  I also have an order dated 3-27-2013 that is virtually identical.  Again, based on information that [defendant] has refused to transport; the fact that force did not have to be used is certainly a good thing, but it still does not take away from the fact that he, basically, refuses to come to court during key proceedings.  Whether he's motivated by his feeling that he needs to have attention drawn to his issues or not, that is, as counsel pointed out, not the proper way to proceed. . . .  [¶] . . . [¶]

"To go on, the requirement is whether or not there is ability and willingness to abide by court procedures and courtroom protocol. . . .  [¶]  So basically, from the pattern of refusal that I have seen, which clearly subverts the core integrity of the proceedings, and the direct refusal to be transported, and all of the measures and the time and the inconvenience, not only to the court, but to counsel as well as staff and to the sheriff's department having to effect these procedures under their current protocols, I don't feel that [defendant] would be able to follow the appropriate directions and follow the policies and practices, and there would be a risk of disrupting court proceedings if he were allowed self-representation.  [¶]  Accordingly, the request for self-representation is denied."

Defense counsel then observed that defendant "was ill those two days and told them that he was ill, and there was no violence, and . . . he's never acted up in court." The court responded, "We have already checked.  We have already determined there was no medical excuse from transport to court.  We already followed the protocol that would be necessary to determine whether or not it was a voluntary refusal or whether he had a medical issue or condition that would have prevented him in some way from being transported."

The parties then agreed to continue defendant's trial dates until July 25, 2013, as defense counsel had just received the case.  There were subsequent changes in defense

counsel, and a number of further continuances were granted before trial began in November 2013.

After the court's denial of his *Faretta* motion, defendant, on multiple occasions, refused to come to court. About four months after the June 10 ruling, defense counsel on October 2, 2013, advised the court defendant "wants to make a *Faretta* motion." The court (the Honorable Daviann L. Mitchell) responded:

"All right. I can make a record that the court is not going to allow him to go pro per based on the nature of the charges, based on his multiple refusals to come to court since I've been on this case. [¶] I have a refusal an extraction order dated 3/27/2013. I have an extraction order dated 5/22/2013. I have the defendant not coming to court on 8/16/2013. I have on 8/20 the defendant refusing to come to court, and another extraction order was issued by myself. I have an extraction order issued on 8/21 because he, again, refused to come to court." Further: "On 9/11 he refused to come to court, and I do believe the defendant had refused to meet with defense counsel as to that date. I believe it was on that date that counsel represented he had only gone down there one time. [¶] On 9/12, defense counsel never showed up. The defendant did refuse to come to court on that day. We had somebody standing and trailed it to 9/13, again the defendant refused to come to court. An extraction order was issued for 9/20. [¶] 9/26 the defendant refused to come to court. This morning he refused to come to court, an extraction order issued. [¶] Under these circumstances with that record and the nature of the charges where this defendant is charged in two separate cases for stalking correctional employees[2] and that coupled with his numerous refusals, this defendant isn't going to be granted his *Faretta* rights. He will not be granted pro per status. So his request to go pro per is denied."

---

[2] Defendant was charged with one count of stalking and one count of assault by a state prisoner. (The court dismissed the assault count at the conclusion of the prosecution's evidence.) At trial, the parties stipulated that in June 2010 defendant had been convicted of stalking, and the prosecution presented testimony under Evidence Code section 1101, subdivision (b) that defendant had harassed another correctional officer.

6

Two days later, when the case was sent to the courtroom of the Honorable Kathleen Blanchard, the court had this to say, in connection with a discussion of defendant's competency to stand trial (of which the court expressed no doubt): "It does appear to me that this defendant has a pattern of not coming to court, of refusing to come to court, willfully refusing to come to court, and when he does comes to court, I also believe he has a pattern with giving the sheriff's department a hard time. [¶] None of this makes me doubt his competency to stand trial. All of this to me is very indicative of someone who wants to control the proceedings and wants to come to court on his terms. [¶] . . . [¶] [The attitude of defendant] may be fairly seen, again, as simply a refusal to either accept responsibility or accept the authority of the court, and that is really what I see as a behavior pattern here of unwillingness to comply and comport oneself appropriately in court as opposed to a mental health issue."

b.      **The claim on appeal**

On appeal, defendant argues the trial court abused its discretion when it denied his *Faretta* motion. We find no merit in his contention.

We take our direction from *People v. Welch*. The trial court's decision " 'will not be disturbed in the absence of a strong showing of clear abuse.' [Citation.]" (*People v. Welch, supra,* 20 Cal.4th at p. 735 ["a trial court must undertake the task of deciding whether a defendant is and will remain so disruptive, obstreperous, disobedient, disrespectful or obstructionist in his or her actions or words as to preclude the exercise of the right to self-representation"; the reviewing court applies "the same deference [as it does to a decision to terminate the defendant's right to self-representation] when it comes to deciding whether a defendant's motion for self-representation should be granted in the first instance"].)

There was no abuse of discretion here. The trial court cogently noted that nothing could be "more subverting of the courtroom proceedings than just to refuse to come to court . . . ." The fact that two prior court extraction orders were required in order to obtain defendant's presence in court constituted "a reasonable basis for the trial court's

conclusion that defendant could not or would not conform his conduct to the rules of procedure and courtroom protocol . . . ." (*People v. Welch, supra,* 20 Cal.4th at p. 734.)

Defendant points out that he did not "exhibit[] any disruptive behavior while he was in court . . . prior to the June 10, 2013 hearing" and there was no evidence he forcibly resisted the two extraction orders. He complains that the court did not consider a less onerous sanction "such as warning [defendant] that if he thereafter engaged in any obstructive behavior . . . his pro per status would be terminated." (See *People v. Carson, supra,* 35 Cal.4th at p. 10 [when determining whether termination of self-representation is necessary, "the trial court should consider several factors in addition to the nature of the misconduct and its impact on the trial proceedings," including "the availability and suitability of alternative sanctions"; "whether the defendant has been warned that particular misconduct will result in termination of in propria persona status"; and whether the defendant has intentionally tried to disrupt and delay trial; "[t]he likely, not the actual, effect of the misconduct should be the primary consideration"].)

Defendant misses the point. The fact that he did not disrupt proceedings when he actually appeared in court, or did not forcibly resist after the court issued an extraction order, is not pertinent to the conduct underlying the trial court's order: his refusal to come to court in the first place, demonstrating his failure to abide by rules of procedure and courtroom protocol, causing repeated inconvenience and unnecessary consumption of time by the court, court staff, counsel and the sheriff's department. When the court solicited defendant's comments about his nonconforming conduct, defendant offered no suggestion that his future conduct would be different, merely saying that "[t]hey didn't have to use any type of force on me," and "I don't have any writeups, and that is all I have to say, Your Honor." Under the circumstances, the court acted within its discretion in refusing the request for self-representation, rather than the "less onerous alternative[]" of granting it with a warning that it would be terminated if defendant's refusals to conform continued.

Indeed, the propriety of the court's denial was confirmed by the defendant's behavior after the court's decision, as defendant repeatedly refused to come to court (after

8

which the court denied his renewed *Faretta* motion). Giving the trial court's decision the considerable weight it is due (*People v. Welch, supra,* 20 Cal.4th at p. 735), denial of the motion was well within the trial court's discretion.

## 2. The Prison Priors

Defendant contends the trial court prejudicially misinstructed the jury on the elements of prison prior allegations, and that a retrial is required on those allegations. The court did not give the standardized CALCRIM instruction No. 3102 on prison priors, but the instruction the court gave (CALCRIM No. 3103) informed the jury of the elements of a prison prior enhancement. Defendant did not object to the court's proposed instruction during the conference to settle the instructions, and did not request any modification, so ordinarily his claim would be forfeited. However, there is insufficient evidence to support a finding that defendant had completed his sentence on one of the prior convictions at the time he committed the current stalking offense. Consequently, we will reverse the true finding on that one prison prior allegation.

### a. The facts

After the jury found defendant guilty of the charged stalking offense, the court conducted a jury trial on the prior conviction allegations.

The court told the jury that the prosecution alleged defendant had suffered these prior convictions:

(1)     Case No. RIF108680, a felony violation of section 273.5, spousal battery, conviction date of "6/17/03" in Riverside County;

(2)     Case No. RIF123944, a felony violation of section 69, "commonly known as threatening an executive officer in the performance of his or her duty," conviction date of "8/23/06" in Riverside County;

(3)     Case No. 08CR13992, a felony violation of section 69, conviction date of "2/27/09" in Jackson County;

(4)     Case No. SWF025029, a felony violation of section 646.9, subdivision (c), stalking, conviction date of "6/22/2010 [*sic*]" in Riverside County; and

9

(5)     Case No. RIF120279, a violation of Health and Safety Code section 11379, sales of a controlled substance, conviction date of "4/21/2005" in Riverside County.

The court further told the jury the prosecution alleged "that those terms were served, and the defendant did not remain free of prison custody and for and did commit an offense resulting in a felony conviction during a period of five years subsequent to the conclusion of said term."

An investigator for the California Department of Corrections and Rehabilitation then testified about the "969b packet"[3] being used to prove the convictions, describing the packet as including certified documents that "tell[] what the individual has been convicted of and what his time or what his sentence is," including fingerprints, photos, and so on.

The certified records – including abstracts of judgment; a log of defendant's "External Movements" from the time he was committed to prison on June 20, 2003, through his "jurisdictional discharge" on January 17, 2013; and other documents – were admitted into evidence. The court then instructed the jury.

In addition to instructing the jury to decide whether the evidence proved that defendant was convicted of each of the five alleged crimes (CALCRIM No. 3101), the trial court gave the jury an instruction based on CALCRIM No. 3103, as follows: "If you find that the defendant was previously convicted of the crime of Spousal Battery, Sales of Controlled Substance, Threatening an Executive Officer, Stalking, you must also decide whether the People have proved that in the commission of that prior crime Defendant suffered prior conviction and that term was served in state prison and that the defendant did not remain free of prison custody for, and did commit an offense resulting in felony conviction during, a period of five years subsequent to the conclusion of said term. [¶]

---

**3**     "Section 969b permits the prosecution to prove that a defendant served a prior prison term by introducing into evidence a packet of certified prison records." (*People v. McGee* (2006) 38 Cal.4th 682, 702, fn. 8.)

To prove this allegation, the People must prove that: [¶] One, prior felony conviction; [¶] Two, term served in prison; [¶] Three, committed new felony offense; [¶] Four, during period of five years subsequent to conclusion of prior term. [¶] The People have the burden of proving this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been proved."

Defense counsel did not object to the instruction or the prosecutor's argument based on the prior prison term instruction.

The jury found true the allegations that defendant suffered four of the five alleged prior convictions: (1) the June 17, 2003 conviction for spousal battery; (2) the August 23, 2006 conviction for threatening an executive officer in the performance of duty; (3) the February 27, 2009 conviction for threatening an executive officer in the performance of duty; and (4) the June 2, 2010 conviction for stalking.

With respect to each of these four convictions, the jury's verdict stated "that a term was served as described in . . . Section 667.5 for said offense, and that the defendant did not remain free of prison custody for, and did commit an offense resulting in a felony conviction during, a period of 5 years subsequent to the conclusion of said term . . . ."

b.    **The law**

Section 667.5 provides for imposition of a one-year term "for each prior separate prison term . . . imposed" (unless the term was imposed before a period of five years during which defendant "remained free of both the commission of an offense which results in a felony conviction, and prison custody . . . ."). (§ 667.5, subd. (b).) "A prior separate prison term" means "a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison . . . ." (§ 667.5, subd. (g).)

"Imposition of a sentence enhancement under . . . section 667.5 requires proof that the defendant: (1) was previously convicted of a felony; (2) was imprisoned as a result of that conviction; (3) completed that term of imprisonment; and (4) did not remain free for five years of both prison custody and the commission of a new offense resulting in a

11

felony conviction." (*People v. Tenner* (1993) 6 Cal.4th 559, 563 (*Tenner*).) It is reasonable to infer from an abstract of judgment and commitment form, considered in light of the official duty presumption, that officials performed their duty to convey defendant to prison and see that his or her sentence was carried out. (*Id.* at p. 566.) "These reasonable inferences, together with evidence indicating that defendant was out of custody when he committed the later offense, support a finding that defendant completed a prior prison term." (*Ibid.*)

If the trial court fails to instruct the jury on the elements of a prison prior enhancement, "[t]he question then becomes whether the inadequacy of the instructions concerning these priors resulted in a miscarriage of justice, i.e., whether [the defendant] suffered prejudice with respect to the increased punishment for the priors." (*People v. Winslow* (1995) 40 Cal.App.4th 680, 688 (*Winslow*).) A harmless error standard applies to wrongly omitted instructions dealing with enhancements. (*Ibid.* [no prejudice because sentence on the prior prison term enhancements was stayed, so "[t]he jury's determination that he suffered these prior prison terms does not result in any adverse consequences"].)

### c. The claim on appeal

Defendant contends the court "misinstructed the jurors on the elements of the prison prior allegations" and that the error was prejudicial. Specifically, defendant says the instruction was "incomplete" because "it did not reference the requirement that the defendant serve separate and completed prison commitments for each of the alleged prior convictions and likewise did not define the legal term 'separate prison terms.' " He asserts the court should have given CALCRIM No. 3102, on prison priors, rather than the instruction it gave based on CALCRIM No. 3103 (on factual issues for the jury concerning prior convictions).

We reject defendant's generalized assertion that the court failed to instruct on all the elements of a prison prior enhancement, requiring a retrial on all the allegations. The court's instruction covered all the elements of a prison prior, telling the jury that the People had to prove, beyond a reasonable doubt, "One, prior felony conviction;  [¶]  Two,

12

term served in prison; [¶] Three, committed new felony offense; [¶] Four, during period of five years subsequent to conclusion of prior term." This language plainly conveys that a true finding on a prison prior requires a "term served in prison" and a new felony offense during the five-year period "*subsequent to conclusion* of prior term." (Italics added.) These elements are no different in substance from those described in *Tenner, supra,* 6 Cal.4th at page 563, quoted above. And defendant's reliance on *Winslow* (where the court found error because the jury "was not instructed that it had to find that appellant served prison terms and that they were separate") is misplaced, because in *Winslow*, the court gave no instruction at all on the elements of a prison prior. (*Winslow, supra,* 40 Cal.App.4th at pp. 687-688 & fn. 5.)

Further, defendant forfeited his claim that the trial court's instruction was "incomplete." " ' "Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." ' [Citation.]" (*People v. Catlin* (2001) 26 Cal.4th 81, 149.) Here, the instruction given was "correct in law," and defendant did not object to it, or complain that it was "too general," or ask the trial court to instruct (in addition or instead) with CALCRIM No. 3102.

Nonetheless, we reverse the true finding on the allegation that defendant served a term "as described in . . . Section 667.5" on his June 2, 2010 conviction. Entirely aside from the question of instructional error, we do not find sufficient evidence to support a finding that defendant had completed his sentence on that conviction at the time he committed the current stalking offense. While defendant has couched his argument in terms of instructional error and resulting prejudice, he also argues that "there was not substantial, let alone overwhelming, evidence that [defendant] served separate and complete prison terms for each of the alleged prison priors the jury found true," and he points out that an inmate who is convicted of a crime he committed in prison "would not be subject to a prison prior enhancement for the term he or she was serving at the time of the trial because the prisoner had failed to complete the current prison term." With respect to defendant's June 2, 2010 conviction, we agree.

Under section 667.5, "a continuous *completed* period of prison incarceration" is required in order to use a prior prison term to enhance a sentence on the current conviction, and this period includes "any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison . . . ." (§ 667.5, subd. (g), italics added; see *People v. Johnson* (2006) 145 Cal.App.4th 895, 907 ["A prior separate prison term is defined as that time period a defendant has spent actually incarcerated for his offense prior to release on parole"; because the defendant had not yet completed his prison term, the additional one-year term imposed on the basis of that conviction had to be stricken].)

In this case, so far as the prison packet shows, defendant was in prison, serving the sentence on his June 2, 2010 conviction, when he committed the current stalking offense. The prison packet shows his sentence was imposed on June 2, 2010, the same date as his conviction, and he was remanded to the custody of the sheriff "forthwith." While the "External Movements" log shows defendant was then paroled and returned from parole numerous times before his jurisdictional discharge on January 17, 2013, it does not show any commitment for a new offense during this time. And defendant committed the offense for which he was convicted in this case between June 14, 2011, and May 1, 2012, while he was in prison custody. Consequently, the evidence did not show that defendant had served "a continuous completed period of prison incarceration" when he committed the new offense, so the June 2, 2010 conviction may not be used to enhance his sentence for the new offense.

Defendant's contentions as they apply to the other three prison priors the jury found true are without merit. Even if we were to find instructional error, the error would be harmless under any standard, because the priors package demonstrates as a matter of law that the jury properly found true each element of the other three prison prior enhancements.

The abstracts of judgment establish defendant was sentenced to state prison on each of the four convictions the jury found true. The "External Movements" log shows that defendant was first committed to prison because of a new felony commitment on

14

June 20, 2003 (the first prior conviction the jury found true), and that he was paroled and then returned from parole with a new term on three subsequent occasions:  on April 13, 2007, on April 7, 2009, and on June 2, 2010.  That evidence establishes separate and completed terms for the first three convictions found true by the jury.  (*In re Kelly* (1983) 33 Cal.3d 267, 270, overruled in part on other grounds in *People v. Langston* (2004) 33 Cal.4th 1237, 1245-1246 ["[A] prisoner who is incarcerated on both a parole revocation and a new commitment is subject to an enhancement for the offense for which he was on parole."].)

## DISPOSITION

The jury's finding on the allegation that defendant served a prior prison term as described in section 667.5 for stalking (conviction date June 2, 2010, in Riverside County) is reversed.  The trial court is directed to issue an amended abstract of judgment showing three years, instead of four years, imposed for prison priors (§ 667.5, subd. (b)), and reflecting defendant's total prison term is eight years.  The trial court is directed to forward the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


                                        GRIMES, J.

We concur:


            BIGELOW, P. J.



            FLIER, J.


15